87 So.2d 127

David P. SNODGRASS

v.

Ike CENTANNI et al.

No. 42306.

March 26, 1956.

Solomon S. Goldman, New Orleans, for plaintiff-relator.

Dufour, St. Paul, Levy & Marx, Leonard B. Levy, William M. Lucas, Jr., New Orleans, for defendants-respondents.

SIMON, Justice:

Plaintiff filed this suit against Ike Centanni (also known as M. S. Centanni) and his insurer,. Employers Casualty Company of Dallas, Texas, for personal injuries and property damage incurred when a huge liveoak tree, being felled by defendant Centanni, crashed down on plaintiff's automobile. The defendants denied liability, contending that the accident and damages complained of were not caused by any negligence on the part of defendant Centanni but were caused solely by the negligence of the plaintiff.

After trial on the merits, the district court concluded that the accident was caused by the carelessness of Centanni's employees and through no negligence on the part of plaintiff herein and rendered judgment in his favor in the sum of $2,-222.69.

On appeal, the Orleans Circuit Court of Appeal reversed the judgment of the lower court, holding that though Centanni's agents and servants were guilty of negligence, plaintiff's contributory negligence defeated his right of recovery and, accordingly, dismissed his suit at his cost. Whereupon, plaintiff applied to this court for and obtained writs to review this holding, thus presenting to us for determination the existence of contributory negligence, if any, under the facts of this case.

The record discloses that at the time of the accident defendant and his employees were engaged in felling a huge liveoak

tree on a lot bounded on three sides by Metairie Road, Codifer Boulevard and Homestead Street in New Orleans. The Centanni workmen were endeavoring to cause the tree to fall toward Homestead Street by using a winch truck placed at the corner of Homestead Street with a cable attached to the trunk of the tree, so that as the tree fell the winch truck would pull the cable and the tree toward the truck. A bulldozer was used at the base of the tree to assist its falling in the direction toward Homestead Street. But to the surprise of defendant's agents and employees, and in spite of the precautions aforestated, the tree fell into and across Codifer Boulevard, trapping plaintiff's automobile under its branches and requiring them to be cut away to extricate plaintiff from his automobile.

At about 6:00 p. m. on the day of the accident, while returning to his home from his work, plaintiff entered Codifer Boulevard, which was open, unbarricaded and unguarded. In an instant he saw a workman running across the lot, waving his arms, apparently trying to halt traffic on the boulevard due to the tree falling in a direction contrary to defendant's preparations. Plaintiff then glanced up and noticed the tree falling toward him on Codifer Boulevard. He then also saw cars preceding him, travelling in the same direction at accelerated speed, presumably to get out of the path of and escape injury under the falling tree. To escape from his position of danger he had to decide in this fleeting moment whether to turn left or right and climb the neutral ground or sidewalk curbing, or to stop his car where it was without any assurance that he would escape the imminent danger, or because of his position and speed to go forward at an accelerated speed as the other cars had done. Being placed in impending jeopardy of his life and safety, he obeyed the natural impulse of self-preservation by rushing forward to escape the danger, without avail.

Defendants contend that inasmuch as the danger of the falling tree was apparent and obvious to plaintiff when he first entered Codifer Boulevard, a distance of about 100 feet from the falling tree, if he had his car under proper control and was driving at the stated speed of between 20 and 25 m. p. h., he should have been able to bring his car to a stop far short of the path of the falling tree. They contend that plaintiff having needlessly and wilfully exposed himself to known danger is barred from recovery for injuries and property damage sustained by him; that his act was an assumption of risk and contributory negligence and not sudden emergency.

Defendants cite the case of Johnson v. New Orleans Terminal Co., 154 La. 515, 97 So. 795, in which the plaintiff was held to have contributed to his injury by his own negligence when he was struck by the

chains of a derrick. We held that under the circumstances disclosed by the testimony of all witnesses, the danger resulting from the operation of the derrick and the swinging chains was obvious to anyone at the scene and doubly so to plaintiff, who was an experienced longshoreman and who had previously observed the operations of the derrick, with its attending dangers. The danger being thus known, visible and obvious to him, his failure to anticipate or to avoid it or to reasonably attempt to do so was such contributory negligence as would bar recovery.

The Johnson case, being based on a fundamentally different factual situation than that presented in the instant case, is clearly inapplicable.

■ It must be conceded that Codifer Boulevard being open to traffic with no notice or warning of any then impending danger being given, motorists had the right to assume and expect that it was practicable to travel thereon in all safety.

■ It is a well-established rule that persons using a public street which is in constant use and when their attention has not been called to any obstructions or perils thereon, have a right to presume and to act on the presumption that the way is reasonably safe for ordinary traffic. They are not called upon to anticipate danger, nor must they be constantly on the lookout for unknown or latent dangers when there is nothing to put them on guard.

From our appreciation of the record in the instant case, plaintiff was confronted with an emergency caused by the defendant. Until he saw the falling tree and surrounding circumstances above stated, he was unaware of the activity of defendant and his employees. The distance of travel between the entrance of Codifer Boulevard and the site of the falling tree was measurably short, and plaintiff was afforded no opportunity to appraise the situation until he had reached the zone made dangerous by defendant, an area well known to plaintiff as an open thoroughfare often travelled daily by him in safety.

■■ One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Under such circumstances, our law does not require a driver to exercise such control or the same degree of care and caution as is required of a person who has ample opportunity for the full exercise of judgment and reason. Commercial Standard Ins. Co. v. Johnson, 228 La. 273, 82 So.2d 8.

In the case of Hudson v. Louisiana Electric Co., 7 La.App. 78, plaintiff's husband was killed by a falling telegraph pole

when he drove his automobile on an unguarded street past a place where a telegraph pole was being erected; and in holding him free from contributory negligence the court said:

"A danger is not obvious until it is seen and understood. A risk is not assumed until it is known and realized. * * * The open unguarded approach was a tacit proclamation that the pole was safely held up by the pikes."

The rule is well stated in Corpus Juris Secundum that when a person exercises the care and caution in an emergency which an ordinarily prudent person would have used under the same or similar circumstances, he is not negligent merely because he fails to exercise the best judgment, or does not take the safest course, or does not take every precaution which from a careful review of the circumstances it appears he might have taken, or, in attempting to escape the danger under such circumstances, puts himself in a more dangerous position. So also, where by the negligence of another, one is compelled to choose instantly between two hazards, he will not be guilty of contributory negligence although the one he selects results in injury and he might have escaped had he chosen the other or had he done nothing at all. Ordinary care does not require one meeting an emergency to act at all events, where he has no time to decide what to do or to think of anything to do. 65 C.J.S., Negligence, § 123.

The law does not require a choice unerring in the light of after events; it requires such a choice as, under all the known or obvious circumstances, a reasonably prudent man might make. A person is by no means held to the same judgment and activity under all circumstances. The opportunity to think and act must be taken into consideration in determining whether due care was exercised in making a choice between methods or courses of conduct. As hereinafter appears, the fact that one acts in the stress of an emergency or sudden peril not due to his own act or omission justifies conduct that would otherwise be regarded as negligent. 38 Am.Juris., sec. 193, verbo "Negligence".

The circumstances under which a person is required to choose between methods are material in determining whether he was negligent in his choice. Usually the safest course to take when one is handling a vehicle in traffic is to stop when danger presents itself, but there is no requirement of law which will render one negligent if he fails to stop, where, in a sudden emergency, another course of conduct is consistent with ordinary prudence. The law does not expect one to exercise the same degree of judgment in an emergency wherein his personal safety is threatened, as in a situation where he is not subject to the fear of sudden disaster. The law recognizes the fact that a prudent man, when brought face to face with an

unexpected danger, may fail to use the best judgment, may omit some precaution he might have taken, and may not choose the best available method of meeting the dangers of the situation. It does not charge him with contributory negligence for the fact alone that he makes a mistake in the method adopted to escape a peril which exists not through his fault, but through the negligence of another. 38 Am.Juris., sec. 194, verbo "Negligence".

▆▆▆ The district court awarded plaintiff actual damages for hospital and other expenses in the sum of $328.54, for repairs to his automobile in the sum of $394.-15, and for past and future pain, suffering and inconvenience the sum of $1,500, or a total of $2,222.69. Plaintiff prays that the judgment be amended so as to increase the award for pain and suffering. He originally prayed for $6,000 for past and future pain and suffering.

From the time of the accident, May 5, 1952, until the date of trial during March, 1954, plaintiff suffered from pain in his back as the result of the accident. X-ray studies of the lumbosacral spine revealed normal findings. Nevertheless, because of persistent pain and discomfort plaintiff was forced to wear a corset. As of the time of trial he still suffered pain when he remained inactive for a while, as well as on any physical exertion by twisting, or turning, or lifting. Plaintiff is a trained accountant, and therefore his daily work is sedentary; and he complains that toward the afternoon the pain in his back increases so that he is unable to sit still at his work. The pain increases from the activity of driving his car. Pain disturbed his rest while trying to sleep on the night of the date of trial—almost two years after the accident. We feel under the circumstances that the award by the trial court for physical injury was inadequate and should be increased to $3,000.[1]

Accordingly, for the reasons assigned, the judgment of the Court of Appeal is reversed, annulled and set aside, and the judgment of the trial court is amended so as to increase the total award of damages to plaintiff to $3,722.69; and as thus amended it is reinstated and made the judgment of this court.

1. Where the Court of Appeal has reversed the judgment of the district court, necessarily there is no occasion for it to pass upon the quantum of damages. Upon a reversal of the judgment of the Court of Appeal by this court, it has been our practice to remand the case to said court for consideration and determination of the quantum of damages to which plaintiff may be entitled. (See Jackson v. Jones, 224 La. 403, 69 So.2d 729 and cases therein cited, and Thomas v. Checker Cab Co. of New Orleans, Inc., 229 La. 1079, 87 So.2d 605.) However, in the instant case the quantum of damages to be fixed involves the simple and single question of the extent of plaintiff's personal injuries; and a casual reading of the evidence clearly establishes the quantum awarded by the decree of this court, thereby expediting a definitive adjudication in this particular case.