AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover of the State, through the Department of Highways, damages for personal injuries, and to be reimbursed medical expenses incurred in the treatment of his injuries arising out of an accident wherein he, as the driver of an automobile on Interstate-20, ran into a barricade and swerved into an “Exit” signpost.
From a judgment in favor of plaintiff, defendant appealed.
Negligence charged to the State, through the Department of Highways, consists of a failure to maintain lighted flares or flashing-light signals at the barricade or to maintain such flares or lights as prewarn-ing signals to motorists approaching the barricade, or to post signs informing motorists of the presence of the barricade and warning them to reduce their speed.
Charges of contributory negligence directed to plaintiff consist of operating a vehicle in a generally careless manner at an unreasonable and excessive rate of speed, and, more specifically, in his failure to maintain a proper lookout or control of his vehicle, to apply his brakes and slow down, or to heed detour warning signs.
Interstate-20 was completed and opened to traffic for a distance of approximately 50 miles westward from Monroe to its intersection with State Highway 151, known locally as the Arcadia-Dubach Highway. Beyond this point the highway was under construction. A barricade was erected across the westbound traffic lanes. Pre-warning signs, the number and distance of which from the barricade were not clearly established, were posted along the highway on the shoulder across an asphalt strip from the concrete slab, the generally traveled portion of the highway. On the occasion of the accident, about 9:30 p.m., no lighted flares were posted at the barricade nor at whatever prewarning signs existed, nor alongside the highway for approximately 200 yards from the barricade, which was usually done according to the testimony of the state trooper who was at the scene within approximately 10 minutes after the occurrence of the accident.
Plaintiff was accompanied by Mr. and Mrs. Jack T. Cannon in the Cannon automobile. Mrs. Cannon was seated to the right of the driver; Mr. Cannon, on the rear seat. Neither of these parties had been on this segment of Interstate-20 prior to that occasion. They entered the highway in West Monroe and proceeded westerly to the scene of the accident without stopping. The usual exit signs observed along the highway from the time they entered it were given only casual consideration as they intended to proceed, which they did at a speed of approximately 60 m.p.h. until plaintiff observed an “Exit Ahead” sign as he approached the vicinity of Arcadia, whereupon he reduced his speed to approximately 50 m.p.h. Moments later, when the car’s headlights flashed on *589 the barricade at a distance of from 75-100 feet, Mrs. Cannon shouted a warning whereupon plaintiff applied his brakes and skidded his car, but, nevertheless, struck the barricade and swerved to the right into an exit sign. The force of these impacts caused the injuries of which plaintiff complains.
A general rule well recognized in the jurisprudence of this State is that a motorist using a public highway has a right to assume and to act upon the assumption that the highway is safe for the usual and ordinary traffic, day or night, and that he is not required to anticipate extraordinary danger, impediments, or obstructions to which his attention has not been directed. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); Christ v. State, Department of Highways, 161 So.2d 322, 327 (La.App., 3d Cir. 1964—writ refused).
Another rule equally well established is that highway authorities have a duty to thus maintain highways or to provide proper safeguards or give adequate warning of dangerous conditions in the highway; and that due care may require the safeguarding of dangerous places by the erection and maintenance of suitable signs, barriers, guardrails, or fences, and, where circumstances, such as nighttime, require it, proper lighting. In view of these principles and the facts as to the occurrence of this accident, to which we have already referred, the conclusion is inescapable that the highway authorities failed to. provide adequate warning signals and devices to protect motorists approaching the scene of the accident.
Defendant contends, however, that the authority to supervise and regulate all traffic on public highways was delegated by the Legislature to the Department of Highways as an exercise of its police power, and cites, in support thereof, LSA-R.S. 48:21, 32:2, and 32:236. The position assumed by defendant is that the power to regulate the use of the State highway system encompasses the right to regulate all traffic and that “Any regulation promulgated by the department pursuant to the authority granted by this section or by any other provision of law shall become effective when filed with the clerks of court in the parishes in which such regulation is to be effective or upon the erection of signs on the affected highways giving notice thereof.” LSA-R.S. 32:2, subd. B.
Thus, it is contended that the sections of the statute referred to specifically grant the Department of Highways the discretionary privilege of traffic regulation by placement of such warning signs, signals, and barricades or other traffic control devices as are desirable in its judgment to guide, inform, and warn the traveling public; and that when the Department has exercised its discretion, particularly in determining the size, kind, manner, or placement of warning signs, its determination as to the adequacy vel non of such warning devices or their placement is beyond judicial review. We recognize the principle that courts do not ordinarily have the right or authority to arbitrarily substitute their own judgment for that of an administrative agency. We are, however, of the conviction that the judiciary has a duty as well as a right to determine the validity of an administrative regulation where there has been a clear abuse of the authority vested in such agency.
At this point it may be appropriate to observe that LSA-R.S. 48:345, which in part provided that “The department shall erect and maintain all signs, signals, or devices necessary for informing, directing, cautioning, and warning the traveling public,” has been specifically repealed. Act 310, Sec. 399, Section III (apparently omitted in the Louisiana Revised Statutes). Insofar as we have been able to determine, there is now no statutory provision for the placement of signs, markers, and signals upon the highways in this State other than as may be specified by the Department of Highways under LSA-R.S. 32:235. At this point it appears appropriate to observe *590 that this record is barren of any showing of the Department’s exercise of the privilege purportedly granted to promulgate regulations upon the subject of traffic control through the erection and maintenance of warning devices, signs, or barricades. If such a promulgation has been made, the contents of the regulations are not disclosed by the record.
However, in the absence of any statutory direction to the Department of Highways as to markers, warnings, and signal devices along public highways, the law pertaining to torts in general, particularly the provision of LSA-C.C. Art. 2315 that “Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * may be applied in instances such as presented here.
Lastly, the defendant would invoke the principle of nonliability where it had no notice or knowledge of the danger or defect in the highway and had neither time nor opportunity to remedy it. Negligence on the part of highway authorities may be predicated, as was done here, upon their having left a dangerous or defective condition of the highway improperly guarded, and liability was incurred as a result thereof, where the authorities knew or should have known of the condition and failed to remedy it. The application vel non of this principle is dependent upon the facts established in a particular case.
Under the facts established in the instant case, defendant’s contention is without merit. Defendant’s foreman, charged with the responsibility relative to the maintenance of these barricades and signs, testified that it was his custom to snuff out the flares on the smudge pots in the mornings, to fill the containers with kerosene, and to return in the afternoons beginning at approximately three o’clock, place the flares in proper position and to light them. This process was repeated daily, that is, each day he worked. He worked five days a week, but no mention was made of the particular days; nor was any account given of what was done the two days a week he and his crew were not working.
The state trooper, who arrived at the scene of the accident within 10 minutes after its occurrence and who investigated the accident, testified that, from his own observation, as well as from reports made by persons reaching the scene prior to his arrival, and from statements given by plaintiff and his companions, there were no lighted flares at the barricade. The trooper testified, moreover, there were no lighted flares at any of the signs alongside the highway which plaintiff passed on his approach to the barricade; nor were there flares alongside the highway as was usual for a distance of 200 yards from the barricade. If the smudge pots had a full supply of fuel, a most unusual and queer coincidence would have resulted from the extin-guishment of all of them within a period of approximately six hours.
The foreman’s testimony, due to its incompatibility with that of the trooper and other witnesses, was unconvincing to the trial court.
From all of these facts, we are not convinced that it was established the flares at the barricade, in front of the prewarning signs and alongside the highway, were lighted on the evening preceding the accident. The account given for the absence of flares through isolated instances of vandalism is likewise unconvincing in view of the fact it was not shown any of the smudge pots were missing or damaged on the occasion of this accident other than, according to the foreman’s testimony, one or two at the barricade may have been run over.
The conclusion is inescapable that the highway authorities charged with the duty to maintain the barricade, flares, and warning devices at the scene of this accident knew of the danger but failed to protect the traveling public against it notwith *591 standing they had time and opportunity to do so.
The accident, in our opinion, resulted solely from the fault and negligence of defendant’s employees. We find no factual basis upon which it could be concluded that plaintiff was guilty of any negligence. Hence the plea of contributory negligence was properly overruled.
It appears appropriate to point out, however, that, in the interest of safety, a course of conduct entailing negligence persisted with respect to the maintenance of barricades, flares, and prewarning signs after an inspection at the scene and an investigation of the accident. The danger was left unguarded and exposed to the traveling public for the remainder of the night. Those in charge were apparently oblivious to the dangers confronting motorists approaching the exposed, unguarded and unlighted end of the uncompleted construction.
No issue is presented on this appeal as to the quantum of the award.
The defendant, however, is not assessable with costs other than stenographers’ fees for the taking of testimony, LSA-R.S. 13:4521.
For the reasons assigned, the judgment is amended by assessing cost to defendant with respect only to stenographers’ fees, and, as thus amended, it is affirmed.
Amended and affirmed.