REGAN, Judge.
The plaintiff, Calvin J. Pelas, Sr., filed this suit against the defendants, Gulf Oil Corporation, Robert O. Davis, Jr., and their insurer, Travelers Insurance Company, endeavoring to recover the sum of $17,043.74, representing damages which he asserts were incurred by him as the result of being rear ended by an automobile driven by Davis in the course of his employment with Gulf Oil Corporation.
The defendants answered and denied the several accusations of negligence enumerated in the plaintiff’s petition, and in the alternative they pleaded his contributory negligence and that he possessed the last clear chance to avoid the accident.
After a trial on the merits, judgment was rendered in favor of the plaintiff and against the defendants solidarily in the amount of $7,037.38. From that judgment, the defendants have prosecuted this appeal.
In view of the stipulation between the litigants agreeing that the defendants are liable to the plaintiff, the only question posed for our consideration is the correctness of the amount of damages awarded to the plaintiff by the trial court.
On September 20, 1966, the plaintiff was removed to the Plaquemines Parish General Plospital, where he was X-rayed, given medication, and discharged within several hours. The X-rays were negative for any bone fracture or bone pathology. He was treated by Dr. James T. Reeves, a general practioner, who maintains offices in Buras, Louisiana. He found tenderness on forward bending and flexation of the neck, together with pain in the area of the neck muscles and dizziness. His diagnosis was a cervical muscle strain, and a cervical collar was prescribed for this condition. Thereafter, the plaintiff was treated almost *583 daily with heat therapy. The last time he was seen by Dr. Reeves, he was still wearing the cervical collar and complained of severe pain in his neck.
Subsequently he was seen by an associate of Dr. Reeves, Dr. Roy, who was not requested to testify, and we attach no significance to this fact. He was then treated by Dr. Joseph Frensilli, a specialist in orthopedics. On his initial visit, this physician found tenderness over the middle third of the trapezius on the right side, with range of motion of the neck limited in all directions to approximately 50% of what is considered to be normal. An analysis of the plaintiff’s X-rays by this physician resulted in the conclusion that they were within normal limits. He advised the plaintiff to maintain the regime of diathermy, muscle relaxants, and the use of a cervical collar which had been previously prescribed. In addition thereto, he was ordered to undergo intermittent cervical traction at home. On November 2, 1966, he advised Dr. Frensilli that the traction had greatly improved his condition, and a reexamination proved to be negative on his last visit which occurred on November 16, 1966.
The plaintiff explained that he continuously suffered from pain in the back of his head and neck. He wore the cervical collar from September 22, to November 2, 1966, a period of approximately forty-two days. The home traction ordered by Dr. Frensilli was undertaken for a daily period of one hour and twenty minutes from October 20, to November 16, 1966, and the traction was then used for twenty minutes per day from November 16, 1966, to February 15, 1967.
The only other evidence with respect to the plaintiff’s injury appeared in the stipulated report of Dr. Dabney Ewin, who examined the plaintiff at the request of the defendant on November 30, 1966. At that time, he informed this physician that his headaches had essentially cleared; however, his neck, which was sore, sometimes gave him a “popping sensation”, and that his entire left arm occasionally experienced a sensation of numbness. This physician found no objective evidence of the plaintiff’s complaints, and discounted his assertion of numbness entirely as a subjective complaint. He concluded that at the time of his examination the plaintiff was free of objective residual symptoms, and possessed only mild subjective complaints of soreness in the back of the neck and an occasional “popping sensation” therein. Dr. Ewin concluded that if the plaintiff would continue with his present treatment, he would be relieved of his residual subjective complaints in the near future and would not have permanent residual disability as the result of the accident.
The plaintiff returned to supervisory type work on November 16, 1966, and resumed full time employment on February 15, 1967, the date on which he was discharged by Dr. Frensilli.
The defendants do not take issue with the award to the plaintiff of $257.38 for special damages incurred by him as the result of the accident; however, they do contend that the lower court’s award of $5500.00 for the plaintiff’s injuries and $1280.00 for loss of earnings was excessive.
With respect to the lower court’s award for the plaintiff’s personal injuries, it is well established that each case of this nature must be decided on its own facts and special characteristics, and that awards in similar cases are relevant merely to determine whether the award of the district judge was so excessive or inadequate as to constitute an abuse of the wide discretion afforded him.[1] The defendants cite innumerable cases involving injuries which *584 they insist are similar to those incurred by the plaintiff. However, suffice it to say that an equal number of cases could be referred to in which awards far higher were made to the plaintiff for injuries similar to those incurred herein. A typical example thereof occurred in the case of Desroche v. Seybold,[2] wherein the court awarded the sum of $7,500.00 for injuries somewhat less than those sustained by the plaintiff in this case.
We have evaluated all factors involved herein, including the apparent severity of the plaintiff’s injury, the treatment required to bring about his recovery, the inconvenience and suffering which he experienced, and as a result thereof we are convinced that the lower court did not abuse the “broad discretion” afforded it in awarding damages to the plaintiff in conformity with the rationale of the prevailing jurisprudence.
The award for lost wages was predicated upon the testimony of Elmore Edgecomb, with whom the plaintiff was engaged in a sort of joint venture when the accident occurred. Edgecomb appeared as a witness for the defendants, and he testified in conformity with his calculation that the plaintiff lost the sum of $160.00 per week which would have emanated from the construction of burial tombs in Nairn, Louisiana. The trial judge obviously accepted this statement of the plaintiff’s lost wages as true, and awarded him the sum of $1, 280.00 based upon an estimated loss of $160.00 per week for a period of eight weeks.
The defendants have endeavored to argue that because the plaintiff earned $500.00 and $400.00 respectively less in 1965 and 1967 than he did in 1966, the year of the accident, he had failed to prove that he lost any wages. We are not impressed by this argument since we are convinced that the plaintiff was incapacitated for a period of eight weeks, and the evidence establishing his income of $160.00 per week stands uncontradicted in the record.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendants are to pay all costs incurred herein.
Affirmed.

. See Gaspard v. Le Maire, 245 La. 239, 158 So.2d 149 (1963) ; Ballard v. National Indemnity Company of Ornaba, Nebraska, 246 La. 963, 169 So.2d 64 (1964).

. Desroche v. Seybold, La.App., 209 So.2d 288 (1968).