GULOTTA, Judge.
This is an appeal from a judgment dismissing plaintiff’s suit for damages and injury as a result of an automobile accident.
The facts are that plaintiff, Talbot J. Cavalier, was driving his automobile on Louisiana Highway 611-12 in the direction of Lake Ponchartrain in the City of Hara-han on June 29, 1968, at about 7:15 p. m. Highway 611-12 is hereinafter designated as Hickory Street.
Upon reaching the intersection of Hickory and Camden Streets, the left side of plaintiff’s automobile was struck by an automobile driven by Anne Benbrook,[1] the minor daughter of the defendant, James M. Benbrook, who was traveling on Camden Street toward Hickory.
Hickory is a two-lane street with center markings dividing the lanes of traffic. Each lane is approximately 12 feet wide. Plaintiff was traveling on the eastern right side of the highway immediately prior to the accident. Camden is a two-lane, unmarked street and at the corner of the intersection there is a stop sign on Camden directing traffic coming into Hickory to stop and yield to traffic traveling on Hickory.
Plaintiff directs his appeal at the finding of the jury that he was contributorily negligent and that his contributory negligence was the proximate cause of the accident. Plaintiff further complains that the trial judge failed to properly charge the jury on contributory negligence.
Although the jury found Anne Benbrook Davis negligent, it found that her negli *374 gence was not the proximate cause of the accident. Appellees concede the negligence of Anne Benbrook Davis and have never seriously disputed that negligence. Appel-lees further concede that her negligence was a proximate cause of the accident because of her failure to observe plaintiff’s approaching vehicle as she was starting into an intersection when faced with a stop sign, after having stopped.
However, the jury found further that plaintiff was also guilty of negligence, which negligence was the proximate cause of the accident, thereby defeating his claim.
It was stipulated that State Farm Mutual Automobile Insurance Company did insure the vehicle owned by defendant, James Benbrook, and that it provided liability insurance in favor of the defendant and his daughter.
The issue before us is whether or not the jury committed manifest error in finding the plaintiff guilty of contributory negligence which was the proximate cause of the accident, as well as whether or not the trial judge properly charged the jury on contributory negligence when the jury requested additional instructions.
In determining these questions, it is necessary to examine not only the specific instructions given by the trial judge pursuant to the jury’s request, but also the general charge given to the jury.
The specific instructions complained of by plaintiff-appellant were contained in the following charge:
“If you find that there is negligence on the part of both of the parties, and, that this negligence directly and efficiently contributed towards the occurrence of the accident then, under the laws of this State, the plaintiff cannot recover because of the fact that contributory negligence was plead as a defense by the defendant, and, your finding of negligence, though you do not characterize it, you find it negligence if you should so find on the part of the plaintiff, even though you do not characterize it as contributory negligence, in substance and essence it would be.”
This charge is, in our opinion, sufficient when considered in connection with the extensive, thorough instructions on contributory negligence given by the trial judge in his general charge. An examination of the general charge given and as contained in the record reflects that the trial judge properly instructed the jury in this respect. We, therefore, find no error with the instructions given' by the trial judge on contributory negligence and proximate cause.
We are satisfied, however, that the jury was confused and erred in finding the plaintiff contributorily negligent.
The evidence reflects that because of the negligent action of Anne Benbrook in either failing to stop for the stop sign or in entering into the intersection in such a manner as to be completely oblivious to traffic traveling on Hickory Street and in not observing oncoming traffic, the plaintiff was placed in the position of acting under a sudden emergency.
It is a well established principle that when a motorist is faced with a sudden emergency created by the negligence of another person, he is not required to act in a calm, cool manner but is held only to the standard of care of a reasonable, prudent person under the same circumstances. Phillips v. Garden, 211 So.2d 735 (La.App.2nd Cir. 1968), rehearing denied July 1, 1968; Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956).
Clearly, plaintiff acted as a reasonable man under the circumstances. The evidence does not indicate the slightest degree of negligence on the part of the plaintiff. He was traveling in the right lane of traffic in the direction of the Lake well within the speed limit. The speed limit in that area was 35 m. p. h., and he was traveling at a speed of 25 m. p. h. He testified he was approximately half-way into the inter *375 section when the accident occurred. It is axiomatic that he had the right to anticipate Camden Street traffic would stop for the stop sign and maintain and observe its duty to yield to traffic traveling on Hickory Street. In the case of American Road Insurance Company v. Glynn, 184 So.2d 556 (La.App.3rd Cir. 1966), an intersectional collision similar to the case at bar occurred. In granting plaintiff recovery, the Court explained its position:
“Plaintiff’s insured, Thomas, proceeding on a favored street, had a right to assume that his right-of-way would be respected by Mrs. Glynn, who was approaching on the inferior side road; and, that her sudden imprudent entry into his path created a sudden emergency of her sole causing, so that any subsequent error of judgment on his part does not bar his recovery. See Welch v. Welch, (La.App., 4 Cir., 1964), 169 So.2d 713. In the Welch case, supra, the court stated:
‘Our settled jurisprudence is to the effect that a motorist who is driving at a reasonable speed on a right-of-way street has a right to assume that a driver approaching from a less favored street will stop for the intersection and yield the right-of-way ; the motorist on the right-of-way street has the right to indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law. * * *' ” American Road Insurance Company, supra, at 558.
Applying the reasoning in American Road, supra, to the actions of plaintiff Cavalier in the subject case, it would seem that any possible error in judgment by Cavalier under the circumstances would not bar his recovery.
We find it noteworthy, however, that plaintiff in fact exercised good judgment when confronted with the emergency. After being placed in a position of a sudden emergency, plaintiff attempted to increase the speed of his automobile in order to avoid the collision while at the same time swerving to the right, away from the direction of the oncoming vehicle which was attempting to negotiate a left turn into Hickory. Without question, the action of plaintiff was reasonable and prudent while faced with a precarious situation. The court in Snodgrass, supra, particularized the behavior to be expected in an emergency such as the case at bar:
“The rule is well stated in Corpus Juris Secundum that when a person exercises the care and caution in an emergency which an ordinarily prudent person would have used under the same or similar circumstances, he is not negligent merely because he fails to exercise the best judgment, or does not take the safest course, or does not take every precaution which from a careful review of the circumstances it appears he might have taken, or, in attempting to escape the danger under such circumstances, puts himself in a more dangerous position. So also, where by the negligence of another, one is compelled to choose instantly between two hazards, he will not be guilty of contributory negligence although the one he selects results in injury and he might have escaped had he chosen the other or had he done nothing at all. Ordinary care does not require one meeting an emergency to act at all events, where he has no time to decide what to do or to thing of anything to do. 65 C.J.S., Negligence, § 123.” Snodgrass, supra, 87 So. 2d at 131.
The physical facts which establish that the right front of defendant’s car struck the back of the left front door of plaintiff’s automobile and damaged the vehicle from that point to the rear of the bumper substantiates the prudence of the plaintiff in attempting to avoid the accident. Had the plaintiff pursued any other course of action, the resulting damage and injury conceivably would have been more extensive. The defendant obviously had no opportunity to try to avoid the accident because, according to *376 her testimony, she did not see plaintiff’s automobile.
Accordingly, we find that the plaintiff was not in any way negligent and the jury erred in its finding of contributory negligence.
In connection with the damages incurred by plaintiff, it was stipulated that the amount of recovery for damages to the plaintiff’s automobile was the deductible amount paid under the insurance coverage, $100. It was further stipulated that at the time of the accident plaintiff was earning a salary of $175 per week.
The evidence reveals that plaintiff suffered the loss of earnings for a period of eight weeks from July 1 to August 26. This loss totals $1,400.
Dr. Herman Rabin saw plaintiff on July 1, 1968, and diagnosed his injuries as a cervical sprain, a lumbosacral sprain involving muscle spasm and also sprain of the right shoulder with limitation of action. X-rays of the neck and lower back were negative for fracture or dislocation.
Plaintiff underwent physiotherapy treatment consisting of diathermy to the neck, lumbar spine, and right shoulder from July 1, 1968 through the month of August and thereafter on a basis of once a week and lengthened to once a month until discharged on October 17, 1968. He underwent traction on one or possibly two occasions and was instructed to use a cervical collar between July 13 and August 26. Painkilling drugs were prescribed by Dr. Rabin.
The neck and back pain persisted in September and plaintiff complained of residual, intermittent pain. At the time of discharge on October 17, there were no objective findings at that time, and Dr. Rabin concluded he had fully recovered.
Dr. Leonard E. Horn, an orthopedic surgeon, saw Mr. Cavalier on September 26 and at that time no abnormal objective findings were demonstrated. Plaintiff did, however, complain of tenderness in the lumbosacral area.
Dr. G. Gernon Brown examined plaintiff on August 12 and found no abnormal objective findings. However, there was complaint of pain in the neck, shoulder, and lower back area.
While plaintiff attempted to show that the injury sustained by him aggravated a pre-existing arthritic condition in the spine, this evidence was lacking and the testimony was in the realm of conjecture and speculation.
We find the special damages incurred by plaintiff consist of the following:
$ 100.00 — Deductible amount paid for repairs of automobile
402.00 — Fisher-Rabin Clinic
13.68 — -Prescriptions
1,400,00 — Loss of Earnings
$1,915.68
We have determined that $5,000 would be a proper award for the pain and suffering incurred by plaintiff.
See Pelas v. Gulf Oil Corp., 222 So.2d 581 (La.App.4th Cir. 1969); De Battista v. Southern Pac. Co., 222 So.2d 552 (La.App.4th Cir. 1969); Palmisano v. United Services Automobile Ass’n, 217 So.2d 774 (La.App.4th Cir. 1969).
For the hereinabove reasons, the judgment below is reversed and judgment is now granted in favor of plaintiff and against defendants in the sum of $6,915.68. Defendants to pay all costs.
Reversed and rendered.

. Subsequent to the accident and prior to the trial, Anne Benbrook became married and is referred to in the record as Anne Davis.