SARTAIN, Judge.
Plaintiff brought this action seeking damages individually and on behalf of his minor daughter, Penny Daigre, who was injured when she was struck by an automobile driven by Brian Schneider, the minor son of defendant, R. H. Schneider. The trial judge, for written reasons assigned, rejected plaintiff’s demands on the grounds of contributory negligence on the part of his daughter. We agree with this conclusion and affirm.
The accident giving rise to this litigation occurred at approximately 2:30 A.M. o’clock on June 13, 1968, at the College Drive exit of Interstate 10 (I — 10) in Baton Rouge, Louisiana. I — 10 at the scene of the accident is a six lane concrete surfaced limited access highway with three lanes for each direction of traffic, with a wide neutral ground separating them. At the scene of the accident it runs in a generally east-west direction. West bound traffic may exit I — 10 at this point to enter College Drive. College Drive exit begins a gradual departure from the outside west bound lane and continues in this fashion a distance of some 400 yards where it makes a more abrupt turn to the north and completely leaves I — 10 and proceeds to College Drive, which runs in a north-south direction. The intersection of I — 10 and College Drive is bridged by an overpass. When the accident occurred the weather was clear, the roadway dry, and the lighting dark, since there were no lights on I — 10 at the time.
Plaintiff’s daughter, Penny Daigre, was in the company of four other young people. Fred Weinstein was the host driver, the other occupants were Fred Blanche, III, Cindy Turnage and Bill Tolkin. Shortly before the accident they were traveling in a westerly direction on I — 10 and ran out of gas. They parked their car on the asphalt shoulder and proceeded to walk in a westerly direction to seek a service station. Young Blanche and Weinstein walked ahead some 40 to 50 yards and at the moment of the accident were commencing to cross the overpass over College Drive. Penny Daigre, remembering that there was a service station on College Drive, walked ahead of Cindy Turnage and Bill Tolkin in an effort to catch Blanche and Weinstein. In doing so, she had traversed the exit lane for College Drive. Cindy Turnage and Bill Tolkin were also continuing in a westerly direction at a slower pace, walking along the asphalt shoulder to the right of the white line marking the right boundary of the College Drive exit. Cindy estimated that she and Tolkin were some 40 to 50 yards to the rear or east of Penny. She stated further that she observed the approach of the Schneider vehicle and called to Penny to “look out”. She recalls Cindy turning slightly towards her and then the next thing she knew the vehicle *208 had taken the College Drive exit and had struck Penny Daigre.
Fred Weinstein and Bill Tolkin did not testify. Young Blanche testified that the first knowledge he had of an accident was when he heard a “thump” and turned around and observed that Penny had been struck. He did not hear the sound of any horn nor does his testimony reflect that he was aware of the approach of the Schneider vehicle. Neither Blanche nor Cindy Turnage felt that they were in a position to estimate the speed of the Schneider automobile at the moment of impact.
Brian Schneider testified that he was proceeding west on I — 10 at a speed of 55 to 60 miles per hour when he observed Penny Daigre. He sounded his horn but observed no reaction from the group. He testified that at that moment he considered Penny Daigre to be in a position of safety, that is, that she had crossed the exit lane, and that Cindy and Bill Tolkin were also in a position of safety on the right shoulder of the highway. Accordingly, he concluded that he could turn onto the College Drive exit with safety. He stated that as he approached the position of Penny Daigre he was traveling 20 to 25 miles per hour and that the latter suddenly turned and took one to one and a half steps back into his direction, at which time she collided with the left front side of his vehicle at a point near the forward portion of the left front door. His testimony in these aspects is corroborated by that of his brother-guest passenger, Donald Schneider.
It is important to note here that as one approaches the College Drive exit the interstate increases in width from three to four lanes and that the right boundary of the outside lane is marked with white paint to distinguish it from the asphalt shoulder. This right boundary marking continues on to designate the right boundary of the College Drive exit. At a point where the exit makes an abrupt turn to the right, the left boundary of the College Drive exit is also marked with a white line to distinguish it from the asphalt shoulder. At a point where the exit makes its abrupt right turn, there is another white line which marks the outside or right boundary of the third lane for west bound traffic. Further to the west of the exit the asphalt portion is elevated and that portion marks the base of a triangle whose apex is located at a point where the delineated left boundary of the College Drive exit meets with the extension of the right boundary of the outside third lane of west bound traffic on I — 10. Thus, we have a neutral area, triangular in form, and completely delineated by the markings on the pavement. In addition thereto, there is the raised portion of the asphalt shoulder which is also marked by white lines which further designates another neutral area. The record preponderates to the effect that Penny Daigre had reached the unraised portion of the triangularly shaped neutral area. She was at this point when she heeded the call from Cindy Turnage and turned in the latter’s direction and had taken one to two steps back towards the east when she was struck by the vehicle.
In denying plaintiff’s claims on the grounds of contributory negligence on the part of Penny Daigre, the trial court stated in its written reasons for judgment:
“The Court is of the opinion that the preponderance of the evidence indicates that the accident occurred at least as a partial result of Penny Daigre’s negligent attempt to recross from the left side of the exit lane hack to the right side. In other words, the Court feels that the accident was caused, at least in part, by the negligence of Penny Daigre in stepping from the shoulder of the exit lane into the path of the Schneider vehicle. Particularly impressive to the Court is the testimony of Officer Sheldon, who stated that Miss Daigre advised him after the accident that she was crossing back across the exit lane when she was struck by the car. Officer Sheldon further stated that Brian Schneider told him after the accident that Miss Daigre *209 had jumped into the exit lane immediately in front of his car. Miss Daigre stated at trial that prior to the impact she was completely out of the exit lane and over the white lines which mark the exit lane. She went on to say that she stepped into the exit lane after hearing a warning shouted to her by Cindy Tur-nage. Miss Turnage, in a written statement given after the accident, said she doubted that the accident was the fault of the driver of the car and that she did not know why Penny apparently did not look for a car as she crossed the exit lane. In view of the evidence, the Court is convinced that Penny Daigre’s negligence was a proximate cause of the accident and that absent the applicability of the doctrine of last clear chance, her negligence precludes any recovery on her part.”
On appeal, plaintiff claims:
“that the trial court erred in finding that Penny Daigre was contributorily negligent and in not applying the doctrines of ‘sudden emergency’ and ‘last clear chance.’ Particularly, the court erred in finding that Penny Daigre was ‘not in a position of peril when Brian Schneider first observed her.’ ”
We are of the opinion that the facts in this case, as shown by the record, do not warrant the application of the doctrines of sudden emergency or last clear chance. Plaintiff argues that the doctrine of sudden emergency should apply because Penny Daigre, when she observed the approach of the Schneider vehicle, was faced with a sudden emergency and had three choices: remain where she was, jump to her left, or jump to her right. Her contention is that the emergency was the appearance that the Schneider vehicle was headed directly towards her. We do not disagree with the statement that the Schneider vehicle appeared to be headed straight to her because undoubtedly it had begun to make its right turn on the College Drive exit. But the emergency claimed by plaintiff was created by her own conduct. By her own admission, she had crossed the exit and thus was in a position of safety when her attention was attracted to the approach of the oncoming vehicle by a call from Cindy Tur-nage. Regretfully, plaintiff’s daughter took the one action that caused her to be struck by the vehicle, namely, she jumped back into the exit lane. For a claimant to avail himself of the doctrine of sudden emergency, he must not have been a party to the creation of the emergency. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956). While we can visualize situations where the conduct of a person that creates a sudden emergency is not negligence, Penny Daigre’s action in the instant matter constituted negligence on her part as found by the trial judge. She crossed an exit lane on a multi-lane high speed highway without first ascertaining whether or not she could do so with safety.
With respect to the applicability of the doctrine of last clear chance, counsel for plaintiff argues that Miss Daigre was in a position of peril commencing from the moment she left the parked vehicle and walked along the side of I — 10. We do not find that Miss Daigre was in a position of peril by the mere fact that she was walking along the asphalt shoulder of I — 10. She was not in a position of peril until she made a sudden move from a position of safety which caused her to be struck by the vehicle. Brian Schneider testified that when he commenced to make an abrupt right turn on the College Drive exit, Miss Daigre was in the neutral area and he “calculated” that she was in no danger and he could therefore proceed to exit I — 10. This judgment on the part of Schneider is supported by the record. For the doctrine of last clear chance to apply, three essential elements must be present, namely: Plaintiff must be in a position of peril of which she was unaware or from which she was unable to extricate herself; plaintiff must also show that defendant was in a position to discover her peril with the exercise of reasonable care, caution and obser *210 vation; and thirdly, plaintiff must show that when defendant discovered her peril he was possessed of a reasonable opportunity to avoid the accident. Gauthreaux v. Edrington, 220 So.2d 138 (1st La.App. 1969). As we have stated above, Miss Daigre was not in a position of peril until she jumped in the wrong direction. As a matter of fact, she was in a position of safety and the Schneider vehicle would have passed without any untoward event. Defendant’s negligence, if in fact it is negligence, was in passing Miss Daigre as closely as he did. However, when his decision to do so was made, Miss Daigre’s movement was towards an even more secure position rather than a more dangerous one. Thirdly, when Miss Daigre jumped into the direction of the Schneider vehicle, it was when the latter was within ten feet of her and the driver did not have a reasonable opportunity to avoid the accident.
Accordingly, for the above and foregoing reasons, the judgment of the District Court is affirmed at appellant’s cost.
Affirmed.