REGAN, Judge.
The plaintiff, Roxanne Tannehill, filed this suit against the defendants, Thomas W. Roberts, State Farm Mutual Automobile Insurance Company, Roberts’ liability insurer, and Trinity Universal Insurance Company, the liability insurer of her own vehicle, in an endeavor to recover the sum of $54,000.00 representing personal injuries and property damage which she insists was incurred by her as a result of the joint negligence of Roberts and of her husband, Raymond Tannehill, the operator of her vehicle when a head-on collision occurred late at night in Louisiana Highway 21 near the City of Bogalusa, Louisiana.
Each of the defendant insurance companies answered and generally denied the accusations of negligence set forth in the plaintiff’s petition, and each asserted that the proximate cause of the collision was the negligence of the operator of the vehicle insured by the other company.
*657 Prior to the trial hereof, State Farm filed a concursus proceeding in Washington Parish wherein it deposited the total amount of its policy limits for personal injuries in the registry of the Court and then obtained an injunction which restrained the litigants from prosecuting any suit against it in any other parish arising out of this accident. Consequently no legal action was taken herein against State Farm Mutual, with the exception of the plaintiff’s claim for property damage in the amount of $900.00 and liability therefor was stipulated and agreed to by this insurer. The suit against the individual defendant, Thomas W. Roberts, was voluntarily dismissed by the plaintiff predicated on the disclosure of Roberts’ discharge in bankruptcy prior to the trial.
The case was litigated before a jury and judgment was rendered in favor of the plaintiff and against Trinity Universal Insurance Company in the amount of $5,000.00 and against State Farm Mutual Automobile Insurance Company for property damage in the agreed sum of $900.00. From that judgment, Trinity Universal Insurance Company has prosecuted this appeal.
The record discloses that on the night of June 19, 1966, the plaintiff was riding in the right front seat of her automobile, which was being driven by Tannehill, her husband. Two of her husband’s sisters were passengers and they occupied the rear seat. The plaintiff’s vehicle was proceeding in a southerly direction or from Boga-lusa toward New Orleans in Louisiana Highway 21, which is a two lane blacktopped highway accommodating traffic moving in both a northerly and southerly direction. Simultaneously the Roberts vehicle was being driven in this highway in a northerly direction or toward Bogalusa. When the Tannehill vehicle approached a curve in the road approximately one mile south of Bogalusa, colloquially known as “White’s Curve”, all four occupants thereof noticed the lights of the Roberts vehicle approaching from the south as he rounded this curve. They all testified that as the vehicle appeared in this curve they could see from its head lights that it was weaving back and forth from one side of the road to the other in such a fashion that it intermittently occupied both lanes of traffic. This erratic behavior of the vehicle became visible to Tannehill when he was approximately 600 feet from the center of the curve, and moving at a speed of about 50 miles per hour. The Roberts vehicle was also being driven at a speed of approximately 50 miles per hour. The point of impact occurred about 300 feet north of the arc of the center of the curve and in the center of the southbound lane of traffic. The record discloses that Roberts turned his car to the left into the southbound lane of traffic just as he reached the plaintiff’s vehicle, and struck its right front section with the right front of his own automobile.
The state trooper who investigated the accident testified that the plaintiff’s vehicle impressed about 48 feet of skid marks upon the highway, all of which were in the southbound lane, with the exception of the last two or three feet. He therefore concluded that Tannehill, the operator of plaintiff’s automobile, attempted to make a sharp turn to the left in order to avoid the Roberts vehicle, which was then moving directly toward him in the southbound lane. The Tannehill vehicle finally stopped in the southbound lane, with the exception of the left front wheel, which was a foot or two in the other lane as a result of Tannehill’s effort to turn away from the Roberts vehicle.
The testimony adduced from Tannehill and the other three occupants of his vehicle discloses that as the Roberts vehicle drove into the curve Tannehill removed his foot from the accelerator in order to ascertain which course of action should be pursued when he was reasonably sure that the Roberts vehicle was going to enter his lane of traffic. He chose to apply his brakes and execute a sharp turn to his left. Unfortunately, however, this course of action *658 was not sufficient to avoid the accident, and the collision ensued.
Since it was stipulated at the trial hereof that Roberts was at fault in the operation of his motor vehicle, the only question now posed for our judgment is whether the plaintiff’s husband, Tannehill, was guilty of negligence in the operation of his vehicle in not exercising a safer course of action in order to avoid the collision.
Tannehill’s insurer contends that the rationale of the doctrine of sudden emergency must be used in evaluating any fault on the part of Tannehill in view of the manner in which this accident occurred. On the other hand, the plaintiff insists that her husband was guilty of negligence in that he chose to remain in the roadway without coming to a complete stop or alternatively, he failed to drive their automobile upon the shoulder of the highway in an effort to avoid the collision.
One of the leading Louisiana cases which satisfactorily explains the ramifications of the doctrine of sudden emergency is Snodgrass v. Centanni.[1] Therein the organ for the Court reasoned that one who suddenly finds himself in a position of immediate peril without sufficient time to consider and weigh all of the circumstances or procedures which may be used to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon due reflection appears to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Under these circumstances the driver is not required to exercise that degree of control or caution required of a person who has had ample opportunity for the full exercise of judgment and reason.[2]
In addition thereto, an operator of a motor vehicle faced with a sudden emergency is not required to make a choice which would be unerroneous when considered in the context of after-events. All that is required is that the driver make that choice which a reasonably prudent man might make under all the known or obvious circumstances.
To reiterate, only for the purpose of emphasis, our judicial philosophy has long recognized the fact that a prudent man, when confronted with an emergency may fail to exercise the best judgment, or he may omit some precaution he should have taken, or he may not choose the safest available alternative for meeting the dangers inherent in the situation. In the last analysis, the law does not condemn a man as negligent simply because he makes a mistake in the method which he adopts spontaneously in order to escape a sudden emergency or peril.
In this case, the evidence discloses that Tannehill was confronted with a sudden emergency late at night. The lights of the Roberts vehicle came into view at a point when it was approximately 600 feet removed from the plaintiff’s car. Since both vehicles were traveling at a speed of 50 miles per hour, or approximately 73 feet per second, Tannehill, the operator of plaintiff’s vehicle had approximately four seconds in which to evaluate the dangers inherent in such a situation, calculate the alternatives available to him, and to choose and then execute that one alternative which would best be suited to avoid the accident.
Since the Roberts vehicle was weaving from one side of the road to the other, Tannehill in effect could choose several courses of action: he could remain on the road and come to a complete stop; he could remain on the road and slow his speed; or he could drive upon the shoulder of the road in an effort to avoid the collision. It is significant to emphasize that this accident occurred late at night which made the choice of a safe course of action even more difficult. In any event, he chose the alternative of remaining on the road at a reduced speed in an effort to avoid *659 the accident. While this course of action proved to be unsuccessful, it is practically impossible in retrospect, to conclude that any other course of action would have effectively avoided the collision.
The whole tenor of the record leads us to the inevitable conclusion that Tannehill’s actions may not be regarded as negligent in view of the sudden emergency created by the Roberts vehicle. Consequently, we are of the opinion that the jury reached a result herein which is manifestly erroneous and therefore this aspect of the case will be reversed.
For the foregoing reasons, that part of the judgment in favor of the plaintiff and against Trinity Universal Insurance Company is reversed, and judgment is now rendered in favor of Trinity Universal Insurance Company, dismissing the plaintiff’s suit at her cost. That portion of the judgment wherein the plaintiff was awarded the stipulated sum of $900.00 for property damage is affirmed.
Reversed in part, affirmed in part, and rendered.

. 229 La. 915, 87 So.2d 127 (1956).

. See also Commercial Standard Insurance Company v. Johnson, 228 La. 273, 82 So.2d 8 (1955).