476 So.2d 559 (1985)
Michael Edward BROWNING, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellant.
No. 84-707.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*560 Watson, Murchison, Crews, Arthur & Corkern, Steven D. Crews, Natchitoches, for defendant-appellant.
Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Commercial Union Insurance Company (hereafter Commercial Union) appeals a judgment in favor of Michael Edward Browning, awarding him personal injury and property damages he sustained as a result of a head-on collision with Commercial Union's insured, Rodney K. Mitcham. Commercial Union contends the trial court erred: (1) in finding Mitcham 100% at fault; (2) in finding Browning rebutted the presumption of negligence operating against him; (3) in applying the doctrine of sudden emergency; and (4) in awarding Browning $20,000 for pain, suffering, disfigurement, scarring, disability and loss of wages. For the following reasons, we affirm.
The trial judge handed down written reasons for judgment setting forth the facts of the accident which we incorporate herein:
"On December 15, 1982, an automobile collision occurred in Natchitoches Parish between a 1969 Corvette owned and operated by plaintiff and a 1979 Ford Mustang vehicle being driven by Rodney K. Mitcham. The accident happened on Louisiana Highway 6. Plaintiff was traveling in an easterly direction and Rodney K. Mitcham had just pulled out of a service station and had entered Highway 6, traveling west. The point of impact was in the westbound lane of traffic, 5 feet from the center line of the highway, 198 feet west of the service station parking lot. Rodney Mitcham was killed in the accident and the plaintiff was seriously injured. Louisiana State Trooper Andrew A. Rafaleowski investigated the accident and stated that the plaintiff's vehicle left one set of skid marks measuring 18 feet in length and one set measuring 21 feet in length. The Mitcham vehicle left no skid marks. The trooper testified that the collision between the two vehicles was as close to being headon as could possibly be. The plaintiff's testimony was that as he approached the service station from the west, driving in an easterly direction, he traveled in his proper lane of traffic in a slight curve of the highway which curved slightly to the left. He further testified that he saw the Mitcham vehicle exit from the service station parking lot. It was night time and both vehicles had their headlights on. Plaintiff testified that it appeared to him that the Mitcham vehicle exited the service station lot, came across the center line of Highway 6 into the plaintiff's lane of traffic; whereupon, the plaintiff veered to his left to try to avoid the accident. At which time, the Mitcham vehicle veered to its right and the cars collided. A vitreous alcohol test on the decedent, Rodney Mitcham, revealed the blood alcohol content of .105. The accident happened at approximately 8:30 P.M."
All of Commercial Union's assignments are based on the trial judge's factual *561 findings. Therefore, to reverse, we must find that the trial court committed manifest error in its factual findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In essence, Commercial Union urges that since the accident occurred in Mitcham's lane of traffic (west bound lane), the trial court committed error. We disagree.
The record shows that the curve was slight and curved slightly to the west. The service station from which Mitcham had just left was located near the curve on the west side. When Mitcham drove into the service station, Jerry McNeal, an employee, testified that he came in "pretty fast" and when he left, he "spun his tires, ... laying down rubber ..." for approximately a couple of feet.
Doyle Withers, an owner of the gas station, testified that Mitcham drove recklessly at a high rate of speed into the service station. Withers thought Mitcham was going to run into the building because he drove "right at the entrance door" and came to an abrupt stop. While Mitcham was there, he ran and jumped on Billy Coleman's "big truck that pulled trailers" which was parked at the station. After Coleman and Mitcham had a short conversation, Mitcham left, according to Withers "about like he come in", spinning out leaving approximately 3-5 feet of rubber. Immediately before Mitcham left, Withers attempted to question Mitcham to find out what was going on, but Mitcham left before Withers could reach him. Withers testified:
"Q. Was there anything unusual about his movements, when he jumped up on this truck?
A. Well, II couldn't figure out what was going on and I was fixing to go out to see what was up. And, like I say, Billy Dean went and they talked for a little while and that's when he taken off out the other drive of the station.
Q. How did he leave the drive of that
...
A. Ah, ...
Q. How did he leave out of your station, driving his vehicle?
A. He left out about like he come in. I got awe had one of those bells, you know, that rubber deal that ...
Q. One of those rubber tubes that's air operated and you run across and it rings a bell, is that what you're talking about?
A. Yes sir. He backed across it and, you know, spun out again and that's when he went out...."
The testimonies of McNeal and Withers convince us that Mitcham was driving recklessly when he left the station.
Trooper Rafaleowski's investigation of the accident does not contradict Browning or show that he acted negligently in any manner. Approximately two hours after the accident, Trooper Rafaleowski questioned Browning at the Natchitoches Parish Hospital. He recalled Browing stating:
"A. He said that he came rightcame into the curve and he saw the headlights of an oncoming car and they appeared to be in his lane. And at the last moment he swerved to the left to avoid the vehicle...."
Browning's testimony parallels the statement he gave Trooper Rafaleowski. He testified:
"Q. Now, you want to tell the Judge what happened as you remember as you approached this point where this accident occurred.
A. Well, as I rounded the curve coming towards Natchitoches from Robeline
...
Q. Going east?
A. Going east. A car had come out of a station where I'd got on around the curve. And a car had come out of the service station there on the left and went across the road and was coming up in my lane. And closer I got the car was still there. And at the last moment I changed lanes to avoid the accident."
It cannot be ignored that Mitcham was driving while under the influence of alcohol which further convinces us that he was *562 driving recklessly, and turned onto the east-bound lane of traffic (Browning's lane) when he exited the service station. Browning's actions were those of a reasonable man placed in a position of peril. It is unfortunate and tragic that Mitcham got in his proper lane of traffic at the same time Browning used the lane in an attempt to avoid a collision.
Therefore, we find Mitcham's negligence was the sole and proximate cause of the accident and that Browning is free of fault. The aforesaid also establishes that Browning rebutted the presumption of negligence which arises when there is a collision in the driver's wrong lane of travel. Likewise, we find that the doctrine of sudden emergency was applicable. Browning was in a position of immediate peril and exercised quick judgment in an attempt to avoid the accident. Because of the sudden emergency, he did not have time to contemplate choices of evasive actions. Tannehill v. Roberts, 216 So.2d 656 (La.App. 4th Cir. 1968), writ refused, 253 La. 643, 219 So.2d 176 (1969), certiorari denied, 396 U.S. 822, 90 S.Ct. 64, 24 L.Ed.2d 73 (1969).
Finally, Commercial Union argues that should we find Browning is entitled to damages, then the award of $20,000 for pain, suffering, disfigurement, scarring, disability and loss of wages is excessive. We disagree.
It is well established that before a court of appeal can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In determining its award of damages, the trial court commented:
"The Court observed the plaintiff from a distance of approximately 3 or 4 feet while he testified at the trial. The Court noticed a very noticeable scar on the plaintiff's forehead above his right eye of approximately 4 inches in length; another scar approximately 1½ inches long on the chin, which was also very noticeable; and, numerous scars on the right knee and right leg. The plaintiff was hospitalized in the Natchitoches Parish Hospital for one week; he walked with the aid of crutches for three weeks; and he was off work for 2½ months. The plaintiff was examined once by a neurosurgeon in Shreveport, but the Court finds that this was more of a precautionary matter."
Browning and his mother testified that he experienced great pain while hospitalized, suffered headaches for several weeks and was required to use crutches. We find the trial court did not abuse his discretion in awarding damages.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant, Commercial Union Insurance Company.
AFFIRMED.