488 So.2d 419 (1986)
Christopher N. WATTIGNY, Plaintiff-Appellant,
v.
Theonie O. BREAUX, et al., Defendants-Appellees.
No. 85-607.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*420 James Wattigny, Hammond, for plaintiff-appellant.
Hal J. Broussard, Lafayette, for defendants-appellees.
Before STOKER and KING, JJ., and COX, J. Pro Tem.[*]
KING, Judge.
The main issues presented by this appeal are whether or not the trial court erred in its determination of the causation and extent of plaintiff's injuries and whether or not its damage award to plaintiff was inadequate.
Christopher N. Wattigny (hereinafter referred to as plaintiff) filed suit against Theonie O. Breaux, Ernest Breaux, Sr., Ernest Breaux Electric, Inc., and Reliance Insurance Company of Illinois[1] (hereinafter referred to as defendant), seeking recovery for damages that he sustained when he fell from his motorcycle as a result of the action he took to avoid a collision with an automobile being driven by Mrs. Breaux. Plaintiff appeals from a trial court judgment in his favor, complaining of an inadequate award of damages.

FACTS
The facts involving the accident upon which this suit is based are basically undisputed. On September 9, 1982, plaintiff was riding his motorcycle in a southerly direction on Lewis Street in New Iberia, Louisiana. At that same time, Mrs. Breaux was traveling in an easterly direction on Trotter Street, heading toward the Lewis Street-Trotter Street intersection. Despite a stop sign on Trotter Street, at its intersection with Lewis Street, Mrs. Breaux entered and stopped in plaintiff's lane of traffic on Lewis Street in an attempt to turn left and go north on Lewis Street. Plaintiff successfully avoided colliding with Mrs. Breaux's automobile, but in the process he *421 lost control of his motorcycle as a result of his evasive action, and thereby fell to the pavement sustaining injuries. Plaintiff was taken by ambulance to Iberia General Hospital where he was treated for abrasions, and where he also received sutures to his right foot and elbow. Plaintiff testified that he decided against admission to the hospital because of his poor financial condition and also because his mother, with whom he resided, was a registered nurse. Shortly after the accident, defendant issued a check to plaintiff in the amount of $2,150.00 to pay for the property damage to plaintiff's motorcycle caused by the accident.
On February 1, 1983, plaintiff filed suit against Mr. and Mrs. Breaux, Ernest Breaux Electric, Inc., and against defendant, requesting damages in the amount of $37,360.00, together with legal interest, penalties, attorney's fees and costs of the proceedings. Through the filing of three supplemental petitions, plaintiff increased his demand to $475,500.00 in damages.
The case was tried in December, 1984 and at that time plaintiff and defendant stipulated that (1) there was $500,000.00 in insurance coverage on the automobile driven by Mrs. Breaux; and (2) Ernest Breaux Electric, Inc., and the estates of Mr. and Mrs. Breaux, both of whom died prior to the time of trial, were dismissed from the suit. Both parties produced lay witnesses who testified during the trial. However, all expert witness testimony regarding plaintiff's medical condition was presented through depositions which were introduced into evidence during the trial.
After hearing the evidence, the trial judge rendered a judgment, which was signed on January 4, 1985, in favor of plaintiff and against defendant in the amount of $10,000.00, together with legal interest from date of judicial demand until paid, and all costs of the proceedings. The trial judge found that plaintiff had failed to prove any physical or medical reason for his back to be in the painful condition of which he complained, and that he also failed to prove a connection between the accident and any back problem which he may now have. The trial judge nevertheless noted that plaintiff did suffer some painful injuries at the time of the accident, and therefore awarded plaintiff $10,000.00, which he stated he felt was a liberal award under the circumstances, to cover medical expenses, pain and suffering, and lost wages.
Plaintiff devolutively appealed the trial court judgment and presents the following assignments of error:
(1) The trial court clearly erred in finding that the preponderance of the evidence, both direct and circumstantial, failed to establish that the vehicular accident of September 9, 1982 was the proximate cause of his neck and back conditions and resulting permanent disability;
(2) The trial court erred by rejecting the greatly preponderant objectively corroborated testimony regarding extent of injury, causation and disability where the record indicates no sound reason for rejection and where the factual finding itself has been reached by overlooking applicable legal principles;
(3) The trial court erred by substituting its own opinion regarding extent of injury, causation and disability when qualitative expert testimony, based on sound reasoning and established fact, indicate to the contrary;
(4) The trial court erred by assigning more weight to the negative testimony of two physicians, neither of whom treated him for his back condition, than to the positive testimony of three treating physicians, one treating chiropractor, and one non-treating physician;
(5) The trial court erred in finding that none of the physicians rendered a diagnosis regarding his back condition, and that the results of all medical tests were negative;
(6) The trial court erred in failing to attach the proper weight to the testimony of lay witnesses in the presence of conflicting medical opinion;
(7) The trial court erred in failing to determine that he was permanently disabled *422 from doing heavy manual labor and further erred by making an inadequate award for lost wages and no award whatsoever for loss of future wages and impairment of earning capacity;
(8) The trial court erred in failing to award all special damages proven by him and for limiting its award for general damages, lost wages and medical expenses to $10,000.00, a sum in itself less than the special damages and costs incurred by him;
(9) The trial court erred in finding that he worked as a roustabout offshore and further by finding that the evidence was contradictory as to the reasons for his leaving different jobs; and
(10) The trial court erred in finding that plaintiff reported to the hospital, when in fact he was transported by emergency ambulance.
Defendant has not appealed the trial court judgment, nor has it answered the appeal filed by plaintiff. Consequently, the trial court's finding of liability on the part of defendant is final. This appeal therefore only involves the issue of causation and the extent of plaintiff's injuries, if any, and quantum of the damage award.

CAUSATION AND EXTENT OF INJURY
In his first five assignments of error, plaintiff contends that the trial court erred (1) in finding that he failed to prove that the accident was the proximate cause of his neck and back condition; (2) in rejecting the "greatly preponderant objectively corroborated testimony" regarding extent of injury, causation and disability; (3) by substituting its own opinion regarding extent of injury, causation and disability for that of qualitative expert witnesses; (4) by assigning more weight to the negative testimony of two physicians, neither of whom treated him for his back condition, than to the positive testimony of three treating physicians, one treating chiropractor, and one non-treating physician; and (5) in finding that none of the physicians rendered a diagnosis regarding his back condition, and that the results of all medical tests were negative.
A review of the record reveals that on the day of the accident, September 9, 1982, plaintiff was taken by ambulance to Iberia General Hospital, where he was treated for abrasions, and where he also received sutures to his right foot and elbow. On the day after the accident, plaintiff visited his family physician, Dr. Vernon Voohries, who was stipulated by the parties to be an expert in the field of general practice. At that time, plaintiff complained to Dr. Voohries of pain in several areas of his body, including his right elbow, right foot, left jaw, right side of his chest, right shoulder and low back. Dr. Voohries gave plaintiff medication for his pain, an antibiotic, and a cleanser and an ointment to be applied to his abrasions.
Dr. Voohries next saw plaintiff on September 14, 1982, which was five days post-accident. At that time, the lacerations to plaintiff's right foot and elbow were healing, but plaintiff still complained of pain in his right knee and low back. Dr. Voohries therefore ordered that X-rays be taken of plaintiff's right knee and lumbar vertebrae. Dr. Voohries next saw plaintiff on September 17, 1982, which was eight days post-accident. At that time plaintiff's only complaint of pain was to his right knee.
Plaintiff next visited Dr. Voohries on September 24, 1982, which was fifteen days post-accident. Dr. Voohries stated in his deposition that plaintiff told him at that time that he had seen Dr. Douglas Bernard, who told plaintiff that he had a ligament strain of his right knee which would take approximately six months to heal. Dr. Voohries again stated that plaintiff had no complaint of pain in his lower back during this visit, and he had no reason to believe that plaintiff would have any residual problems with his back.
Plaintiff did not visit Dr. Voohries again until December 23, 1982 at which time Dr. Voohries treated plaintiff's right ankle and foot which had been injured in a second and *423 entirely different accident, in which a car ran over his foot.
Plaintiff once again had no complaints of back problems at that time. Dr. Voohries last saw plaintiff on November 15, 1983. Dr. Voohries examined plaintiff at the request of the vocational rehabilitation division of the State because plaintiff had applied for vocational rehabilitation. At this time, which was over a year after the accident, plaintiff complained of low back problems.
Plaintiff also had seen Dr. Douglas Bernard, an orthopedic surgeon, on September 22, 1982, thirteen days post-accident, for treatment of his knee. At that time Dr. Bernard was of the impression that plaintiff's knee problem was a strain of the quadriceps mechanism. Plaintiff had no complaint of back problems at that time. Plaintiff saw Dr. Bernard again on October 5, 1982, which was almost one month after the accident. At that time plaintiff was completely asymptomatic, not having any complaints of pain.
Plaintiff visited Dr. Bernard again on October 13, 1982. Plaintiff had bumped his elbow a couple of days prior to the visit, and Dr. Bernard noted that his elbow was bruised. Again, plaintiff had no complaints of pain in regard to other areas of his body. Finally, plaintiff visited Dr. Bernard again on January 11, 1983, which was over four months after the date of the accident. At that time, plaintiff informed Dr. Bernard that he was involved in a lawsuit, and that he had pain in his entire body, including his lower shoulders, legs, arms and that he even had twitches of pain behind his ear. Dr. Bernard thoroughly examined plaintiff at that time, including a complete neurological examination to both the lower and upper extremities, and the examination was normal.
As the trial judge noted in his Supplemental Reasons for Judgment, from January 11, 1983 to the date of the trial, plaintiff was constantly engaged in seeing doctors concerning his complaint of back pain. Numerous tests (myelogram, nerve conduction test, CAT scan, Ferguson-view x-ray, electromyogram, and bone scan) were performed on plaintiff to discover the cause of his back pain, but the results of all of these tests were normal. The only test performed on plaintiff that revealed any sort of objective sign of a problem with plaintiff's lower back was a thermogram. Dr. Thomas LaBorde stated in his deposition that the thermogram suggested that plaintiff may be suffering from L-5 and possibly S-1 nerve root fiber irritation. While Dr. Laborde admitted that a clinical diagnosis in myofascial pain is dependent on the patient's subjective complaint of pain, he nevertheless diagnosed plaintiff as probably having a relatively mild resolving myofascial problem in the neck, shoulder and lumbar area, a lumbar strain with a component of muscular or myofascial pain, and nerve root irritation in the lumbar area.
Plaintiff was diagnosed by Dr. Richard LeBlanc, an orthopedic surgeon, as having a lumbosacral sprain and myofascial pain. Dr. LeBlanc admitted that his diagnosis was based purely on subjective findings, and further stated that he could not relate the findings of the CAT scan with Dr. LaBorde's diagnosis of nerve root irritation because there was not enough nerve pressure on the CAT scan to relate it.
Plaintiff was also diagnosed by Dr. Andrew King, also an orthopedic surgeon, as having a sacroiliac sprain. Dr. King's diagnosis was based on tests that were also dependent on plaintiff's subjective response of pain. Dr. King stated that if plaintiff was able to run in excess of a half-mile on a hard surface in tennis shoes, that fact would change his opinion to believing that plaintiff's condition was not quite so severe as he initially thought. In fact, the trial judge was presented with evidence, in the form of a videotape taken by a private investigator, of plaintiff jogging such a distance in tennis shoes during October, 1984.
In reviewing the medical testimony presented in the case, the trial judge stated that:
"From January 11, 1983, to the present date, plaintiff has been constantly engaged *424 in seeing doctors and taking treatment of various kinds for his low back. He has taken the entire gamut of orthopedic tests from various physicians. Not a single one of the four or five orthopedic specialists have been able to determine, objectively, any signs of orthopedic disability. One or two of the physicians, based upon the complaints, have surmised that the plaintiff may have a deep muscular or soft tissue injury. Cat scans are negative; bone scans are negative; myelograms are negative; all tests are negative...." (Emphasis added.)

In regard to plaintiff's complaints of back pain to his family and friends, the trial judge stated in his Supplemental Reasons for Judgment that:
"There is one thing that is positive about this case; however, and that is that this young man's complaints have been corroborated by everyone who has known him. There is no doubt that he has consistently complained to his mother; who is a registered nurse, to other members of his family; to hunting, fishing and skiing buddies; to the various people who have worked with him on employment that he has engaged in since the accident. The Court does not doubt any of the witnesses who testified for him that his complaints have been present throughout the entire period of time. The Court considers that this sort of testimonial evidence has to be corroborative rather than direct proof of injury."
In addition to proving the extent of his injuries, a plaintiff has the burden of proving by a preponderance of the evidence the causal connection between the accident and the injuries claimed. White v. Cumis Ins. Soc., 415 So.2d 574 (La.App. 3rd Cir.1982), writ den., 420 So.2d 164 (La.1982). It is well established that positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition. Alexander v. Leger, 423 So.2d 731 (La.App. 3rd Cir.1982), writ den., 430 So.2d 75 (La. 1983).
It is clear that an appellate court should not disturb the factual conclusion of a trial court, particularly when it involves credibility of witnesses, unless the conclusion is shown to be clearly wrong. Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3rd Cir.1983); Thibodeaux v. Stagg, 460 So.2d 742 (La.App. 3rd Cir.1984). However, when the trial court's factual conclusion is based on deposition evidence, the "clearly wrong" (or manifest error) standard of review is not applicable because the trial court is in no better position to evaluate credibility or resolve conflicts in deposition testimony thatn the reviewing court. Langford v. Calcasieu Parish Police Jury, 396 So.2d 956 (La.App. 3rd Cir.1981); Wise v. La. Dept. of Transp. & Development, 470 So.2d 954 (La.App. 3rd Cir.1985), writ den., 475 So.2d 1108 (La.1985). Therefore, when evaluating depositions rather than live testimony, a fundamental function of the reviewing court is to determine the sufficiency and preponderance of the evidence. Vial v. Armstrong, 479 So.2d 583 (La.App. 1st Cir. 1985), writ den., 481 So.2d 634 (La.1986).
We have carefully reviewed the record, including all of the depositions relating to plaintiff's medical condition. We agree with the trial judge that plaintiff has failed to prove by a preponderance of the evidence the extent of his alleged low back injury, much less that the alleged low back injury was caused by the accident. As previously mentioned, plaintiff did not complain of back problems to any of his treating physicians from September 14, 1982 (five days post-accident) to January 11, 1983, at which time plaintiff told Dr. Bernard that a lawsuit was pending and that he had pain in practically every area of his body. This four months post-accident period, where plaintiff was found to be asymptomatic as to back problems and/or sacroiliac problems, was during the period of time after the accident when all doctors generally agreed that plaintiff's symptoms referable to these alleged medical problems should have been at their worst. For these reasons, we conclude that plaintiff's first *425 five assignments of error lack merit and that the findings of fact of the trial judge, with respect to these alleged errors, are not clearly wrong or manifestly erroneous.

LAY WITNESSES
In his sixth assignment of error, plaintiff contends that the trial court erred in failing to attach the proper weight to the testimony of lay witnesses in the presence of conflicting medical opinion.
The trial judge made a factual finding that plaintiff had complained to his family and friends of pain in his back since the time of the accident. The trial judge considered the testimony of plaintiff's family and friends to be corroborative evidence rather than direct evidence of plaintiff's alleged back injury. We agree. Some physicians did make a diagnosis of plaintiff having a back injury based on plaintiff's subjective complaints and a thermogram. As did the trial court, we have concluded that the lay witness testimony of plaintiff's family and friends does not outweigh the overwhelming expert witness testimony of the numerous physicians which revealed (1) that plaintiff did not complain of back pain to any treating physician for almost a four month period shortly following the accident, and (2) that, except for the thermogram, none of the numerous tests administered by various doctors to plaintiff revealed any objective signs of plaintiff having a back problem. Accordingly, we conclude that plaintiff's sixth assignment of error lacks merit and that the findings of the trial court with respect to this alleged error, are not clearly wrong or manifestly erroneous.

QUANTUM
In his seventh and eighth assignments of error, plaintiff contends that the trial court erred (1) in failing to determine that he was permanently disabled from doing heavy manual labor, and by making an inadequate award for lost wages and no award for loss of future wages and impairment of earning capacity; and (2) in failing to award him special damages, and in limiting its award of general damages to $10,000.00.
Before the court of appeal can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir.1980); Browning v. Commercial Union Ins. Co., 476 So.2d 559 (La.App. 3rd Cir.1985). As previously mentioned, we agree with the trial court that plaintiff failed to prove by a preponderance of the evidence that he suffered a low back injury as a result of the accident. The trial court did, however, note that plaintiff sustained some painful injuries at the time of the accident, and therefore awarded plaintiff $10,000.00 for general damages, lost wages and past medical expenses.
In view of the fact that Dr. Bernard stated in his deposition that plaintiff was asymptomatic as of the October 5, 1982 visit, less than thirty days after the accident, and also in view of the fact that Dr. Voohries stated in his deposition that plaintiff only complained of pain in his right knee on his September 17, 1982 visit, we conclude that the trial court did not err in awarding plaintiff only $10,000.00 for general damages, lost wages, and medical expenses. Plaintiff's seventh and eighth assignments of error therefore lack merit.

STATEMENTS MADE BY TRIAL JUDGE
In his ninth and tenth assignments of error, plaintiff contends that the trial court erred in (1) finding that he worked as a roustabout offshore and that the evidence was contradictory as to the reasons for his leaving various jobs; and (2) finding that he reported to the hospital after the accident, when in fact he was transported to the hospital by emergency ambulance.
The trial judge stated in his Supplemental Reasons for Judgment that plaintiff worked offshore on light duty as a roustabout. Plaintiff testified at trial that he in *426 fact worked for Aries Marine, which he stated was a "jack-up boat outfit." Plaintiff further stated that his job with Aries was mainly as a deckhand, and that the job consisted mostly of mopping. According to Webster's Ninth New Collegiate Dictionary, the definition of roustabout includes the term "deckhand." In addition, the boats on which plaintiff was working were apparently in the water, not on shore. We find no error in the trial judge's remarks that plaintiff worked offshore on light duty as a roustabout.
The trial judge also stated in his Supplemental Reasons for Judgment that the evidence was contradictory as to the reason for plaintiff terminating his various work activities following the accident. While this statement is apparently erroneous, we find that it is harmless error. Plaintiff testified at the time of trial that he quit working on various jobs because of pain in his lower back, including his job with Mr. Allen Romero, a masonry contractor. Plaintiff had previously stated in his answer to an interrogatory that he worked for Mr. Romero for only one week. At the time of trial, plaintiff testified that he worked for Mr. Romero between one week and ten days. However, Craig Drago, plaintiff's co-worker, testified that plaintiff worked for Mr. Romero for three to four weeks, and Mr. Romero testified that plaintiff worked for him for four to six weeks. Therefore, although plaintiff's testimony that he quit various jobs because of pain was not contradicted, plaintiff's testimony in regard to the duration of at least one of his post-accident jobs was contradicted. Perhaps the trial judge meant to refer to the contradictions about the duration of time plaintiff worked at various jobs. In light of the fact that we have already concluded that plaintiff failed to prove by a preponderance of the evidence that his back injury, if it does exist, was caused by the accident, we conclude that the trial judge's statement that the evidence is contradictory as to the reason for plaintiff leaving various jobs is simply harmless error.
Finally, the trial judge stated in his Supplemental Reasons for Judgment that plaintiff reported to the hospital for emergency treatment. Plaintiff was apparently taken to the hospital by ambulance. We find that this mere difference in phraseology is not even an error, but if so, is certainly a harmless error. The trial judge was well aware, as is this Court, that plaintiff sustained some injuries as a result of the accident. Accordingly, we conclude that plaintiff's ninth and tenth assignments of error lack merit.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.
[1] In his petition, plaintiff erroneously named North American Underwriters as a defendant instead of Reliance Insurance Company of Illinois. Reliance Insurance Company of Illinois made a general appearance in this suit as the insurer of the Breaux vehicle and its insurance coverage was stipulated.