188 So.2d 231 (1966)
J. D. WALLER et ux., Plaintiffs-Appellees,
v.
Max R. KING et al., Defendants-Appellants.
No. 10564.
Court of Appeal of Louisiana, Second Circuit.
April 25, 1966.
Rehearing Denied May 30, 1966.
*232 Davenport, Farr & Kelly, Monroe, for Max R. King and Allstate Ins. Co., defendants-appellants.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for Travelers Ins. Co. and Virgil P. Dalrymple, Sr., defendants-appellants.
McIntosh, Hester & Gilfoil, Lake Providence, for plaintiffs-appellees.
Before HARDY, AYRES, and BOLIN, JJ.
AYRES, Judge.
Plaintiffs, husband and wife, by this action in tort, seek to recover damages for personal injuries sustained by the wife, and special damages sustained by the husband in the nature of hospital and medical expenses, and the loss of the wife's services, resulting from a motor-vehicle collision of March 15, 1961, on U. S. Highway 80 about 2.1 miles west of Rayville, Louisiana. Involved in the accident were an ambulance in which plaintiffs were riding, owned by Gail K. Gay, d. b. a. Gay's Funeral Home and Flower Shop, and a Studebaker automobile owned and driven by Max R. King. Made defendants in addition to Gay and King were Virgil P. Dalrymple, Sr., driver of the ambulance, and the insurer of the ambulance, The Travelers Insurance Company, as was Allstate Insurance Company, insurer of the King automobile.
From a judgment in favor of plaintiff J. D. Waller in the sum of $6,119.25 and in favor of Mrs. Katie Mae Waller in the sum of $20,000.00, against all defendants, subject, however, to a maximum liability of Allstate Insurance Company of $5,000.00, exclusive of interest and costs, the defendants appealed. By answer to the appeal, plaintiffs pray for an increase in the awards.
As to the matter of liability, only questions of fact are primarily involved. It is therefore necessary that the facts be briefly reviewed. U. S. Highway 80, in the vicinity of the accident, is a 2-lane concrete-paved thoroughfare with a white line in the center separating the two traffic lanes. There was a slight double curve in the highway. *233 The ambulance carrying plaintiff J. D. Waller, accompanied by his wife, from Delhi, Louisiana, to a sanitarium in Monroe, Louisiana, was proceeding in a westerly direction. Immediately preceding the occurrence of the accident, the ambulance overtook two other motor vehicles which it passed by crossing the center line into its left-hand traffic lane. Dalrymple, the driver, did not see the oncoming eastbound traffic until he was passing the second of the vehicles in his lane of travel. The first of the oncoming vehicles was that of Rev. E. C. Sorensen, who, confronted with an emergency created by the ambulance's having taken to his lane of travel, immediately took to the right-hand shoulder of the road to avoid what otherwise would have been a head-on collision. Then, for the first time, Dalrymple saw the King car and King saw the ambulance. They were too near to avoid a collision, which occurred about 50 feet or less to the rear of the Sorensen vehicle which had stopped after taking to the shoulder. King had followed the Sorensen vehicle several miles at a distance of five or six car lengths to the rear. Their speed was estimated at 50-55 m. p. h. The speed of the ambulance was probably in excess of 60 m. p. h. The ambulance was on an emergency run; nevertheless, its siren was only intermittently soundedit was not so operating at the time of the accident, nor while the ambulance was engaged in negotiating the curve or in passing the aforesaid vehicles.
Immediately after Sorensen drove his vehicle to the shoulder of the highway, the ambulance and the King vehicle collided, left front to left front, near the center of the highway. There is a dispute as to the exact location of the point of impact with respect to the center of the highway. The record is convincing, however, that a short distance east of the first curve Dalrymple drove the ambulance into his left lane to pass the first of the forward vehicles; that he continued in the left lane until he passed the second of such vehicles; and that, because of the curves and these vehicles, he could not see the Sorensen and King vehicles. Dalrymple kept the ambulance in his left lane until he was well within the first curve and there continued his passing movement until he forced Sorensen off of the highway.
The fact that the ambulance was on an emergency mission does not operate to relieve its driver of the duty of observing traffic rules and regulations. In this regard, we had the occasion to point out in Wiley v. Sutphin, 108 So.2d 256, 260, 261, 262 (1958), that
"While it is true that the speed limitations as prescribed in the Highway Regulatory Act, LSA-R.S. 32:1 et seq., do not apply to police vehicles, fire engines or ambulances operated in emergencies and with due care, the owner or operator of such vehicles is not relieved from the consequences of his non-observance of traffic conditions and otherwise reckless disregard of the safety of others. LSA-R.S. 32:230; Pine v. Edmonds, La.App., 73 So.2d 318; Calvert Fire Ins. Co. v. Hall Funeral Home, La.App., 68 So.2d 626, 629."
* * * * * *
"The duty of a motorist to be ever observant and constantly on the alert applies to the operation of emergency vehicles, and very appropriately so, in that such vehicles are permitted to operate beyond usual speed limitations and in disregard of the usual traffic signals. Privileges accorded drivers in the operation of vehicles in emergencies do not authorize one to drive helter-skelter without making, at least, a casual observation or without keeping his vehicle under some degree of control."
Moreover, in the case cited, it was pointed out that
"Negligence is a want of ordinary or reasonable care, which should be exercised by a person of ordinary prudence under all the circumstances in view of the probable danger of injury; and ordinary, *234 reasonable or due care is that degree of care, which, under the same or similar circumstances, would ordinarily or usually be exercised by, or might reasonably be expected from, an ordinarily prudent person. Brown v. Liberty Mutual Ins. Co., 234 La. 860, 101 So.2d 696; State v. Vinzant, 200 La. 301, 7 So.2d 917, 922; Roder v. Legendre, 147 La. 295, 84 So. 787; Neyrey v. Maillet, La. App., 21 So.2d 168; Frazier v. Ayres, La.App., 20 So.2d 754; Gunn v. Saenger-Ehrlich Enterprises, Inc., La.App., 192 So. 744; Flotte v. Thomas Egan's Sons, Inc., 18 La.App. 116, 134 So. 428; 65 C.J.S. Negligence § 11, p. 387."
These principles are particularly applicable under the facts established to exist here. Dalrymple failed to keep a proper lookout and to accord oncoming vehicles, in compliance with statutory requirements (LSA-R.S. 32:75), half of the maintraveled portion of the highway at least 100 feet before meeting such vehicles. His left lane of travel was not free from oncoming traffic for a sufficient distance to permit such passing movement to be made in safety. The record is convincing of Dalrymple's negligence.
On the question of King's negligence, it appears immaterial whether the collision occurred in King's traffic lane or across the center line in his left lane of travel. King's position is that the collision occurred in his lane and that the sideswiping movement of the ambulance jerked his car around and brought it into the north lane. The fact is that King, as was Sorensen, was faced with an unexpected emergency created solely by the ambulance suddenly invading his lane of travel. If it could be said that King, after having discovered, or who should have discovered, the danger with which he was confronted, had time and opportunity to take evasive action, the doctrine of sudden emergency would not have application to the situation presented here. The rule repeatedly recognized in the jurisprudence is well stated in Snodgrass v. Centanni, 229 La. 915, 87 So. 2d 127, 131 (1956), as follows:
"One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Under such circumstances, our law does not require a driver to exercise such control or the same degree of care and caution as is required of a person who has ample opportunity for the full exercise of judgment and reason."
See, also, Commercial Standard Insurance Company v. Johnson, 228 La. 273, 82 So.2d 8 (1955); Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355, 358 (1961); Rigouts v. Larkan, 244 La. 479, 153 So.2d 363 (1963).
Therefore, it is immaterial whether the collision occurred in King's lane of travel and his automobile was propelled by the force of the ambulance into the opposite lane, or whether King, in some evasive action, steered his vehicle across the center line of the highway. We therefore find no basis for a conclusion that King failed to keep a proper lookout or to maintain his vehicle under control, or that he steered his vehicle across the center line of the highway. Nor does the evidence support a conclusion that he was following the Sorensen vehicle too closely. The conclusion is inescapable that Dalrymple's negligence was the sole cause of the accident.
Finally for consideration is the matter of the awards made to compensate plaintiffs for the injuries and damages sustained. A review of the facts pertinent to this issue is also necessary. Mrs. Waller was sitting in a jump seat, the back of which was *235 metal, and located at the rear of the ambulance, engaged in giving her husband a blood transfusion. The seat, by force of the impact, struck her just above her hips. The impact was sufficient to cause a large bruise on her right buttock. Two physicians testified concerning her injuries and their treatment. Dr. George D. Edwards, Jr., was her family physician. Dr. Roy H. Ledbetter, Jr., was the orthopedist to whom she was referred for treatment.
No question is raised as to the cause of the injuries sustained by Mrs. Waller; from the record, it is clear that they resulted from the accident. Pain persisted from the date of the accident to the date of the trial November 27, 1962, and, for relief, sedativeseven narcoticshave been administered. Prior to trial plaintiff had been hospitalized for approximately 12 weeks, during a considerable portion of which she was in traction. Three myelograms were performed as were two operations for herniated discs. During the second of these operations infection developed, slowing her recovery. A brace was worn at the time of trial. Her condition had been complicated by bursitis, which will probably require additional x-ray treatment. Probability exists for the necessity of another operation to fuse her vertebrae. Permanent injury has therefore been sustained to her back. She is unable to perform her usual household work. The trial court characterized plaintiff's injuries as severe, painful, grevious, and disabling. From our own review of the record, we find this conclusion thoroughly justified.
Plaintiff J. D. Waller was awarded special damages of $2,119.25 for medical expenses incurred, $500.00 for future medical expenses in connection with the treatment of Mrs. Waller, and $3,500.00 for the loss of Mrs. Waller's services. No specific error has been pointed out in either of these awards by either plaintiffs or defendants. They appear neither excessive nor inadequate.
Accordingly, the judgment in plaintiffs' favor against defendants Gail K. Gay, Virgil P. Dalrymple, Sr., and The Travelers Insurance Company is affirmed at defendants' cost, but reversed, annulled, avoided, and set aside as to the defendants Max R. King and Allstate Insurance Company.
Affirmed in part; reversed in part.

On Motion for Rehearing
PER CURIAM.
Defendants, in a motion for a rehearing, for the first time complain of error in an award of compensation for the loss of the wife's services. In again reviewing the record, we find that plaintiff's witnesses were not cross-examined as to this item.
The record, moreover, discloses that prior to the accident Mrs. Waller did her household work, milked the cows, and drove a tractor on the farm. Because of her inability to continue these duties, a maid is employed to do the household work during two days a week at $4 a day. Additional farm labor is likewise required for which $4 a day is paid.
From the evidence adduced by plaintiffs, the court concluded that the amount awarded for this item constituted a minimum of such loss. We find no manifest error in this conclusion.
The motion for rehearing is accordingly denied.