MILLER, Judge.
On January 15, 1968, Mrs. Waldren A. Fourcard slipped and fell while shopping in one of George Theriot’s, Inc.’s grocery stores in Lake Charles. The trial court awarded $10,000 general damages to Mrs. Fourcard and $1,959.13 to her husband for special damages. Plaintiffs appealed seeking an increase in the award of general damages to Mrs. Fourcard. Defendants answered the appeal contending that there is no liability to plaintiffs. We affirm.
Defendants offered no argument to support the contention of no liability. While Mrs. Fourcard was reaching for pancake mix at about eyelevel, she slipped on some loose cornmeal located on a slanting tile in the aisle. Immediately after the accident, the store manager found cornmeal in the aisle and saw footprints and slip marks on the floor in the area where Mrs. Four-card slipped. The manager confirmed the fact that this was slippery and the area had not been checked for approximately three or four hours. He also admitted that the cornmeal was usually on the floor in this area unless the floor had just been cleaned.
It was established that the owner of the store was negligent and this negligence was the proximate cause of the accident. Hay v. Sears, Roebuck & Company, 224 So.2d 496 (La.App. 3d Cir. 1969).
At the time of the accident, Mrs. Four-card was returning from a visit to Dr. Thielen (urologist) where she had been treated for a kidney infection. Her right kidney had been removed in 1963. Immediately after the accident, she rushed back to Dr. Thielen’s office with anxiety about possible damage to her one remaining kidney. He suggested that no test was indicated at that time and she should see an orthopedic surgeon. Dr. Edward W. Phillips, orthopedic surgeon, was contacted and he saw Mrs. Fourcard at the St. Patrick Hospital emergency room.
*790 X-rays were taken of the lumbar spine, the pelvis and the right hip by Drs. War-shaw & Cavin and were read as normal. Dr. Phillips prescribed warm applications and analgesics and returned her to her home thinking no further intensive treatment was necessary. Mrs. Fourcard testified that she attempted to telephone Dr. Phillips the next day. Apparently she did not leave her name because the only record of her attempting to reach Dr. Phillips was found in a notation of January 18 when she telephoned his office to state that she was going to go to the Ochsner Clinic for further treatment.
On or before January 17, 1968, plaintiff’s counsel employed a private investigator to interview witnesses and photograph the site of the accident. Tr. 592, 653. •
On January 20, 1968 plaintiff flew from Lake Charles to New Orleans where she was met by ambulance and taken to Ochs-ner Hospital. She was a patient in the urology department until January 25th when she was transferred to Dr. McFarland in orthopedics. Plaintiff was assured that her kidney had not been injured in the accident.
Dr. Gordon D. McFarland, Jr., orthopedic surgeon, found spasm of the muscles along the spine with pain radiating down the right leg. X-rays were taken, and he testified that these and the neurological examination were normal. He diagnosed an “acute lumbar strain” and prescribed relaxants and medication and the application of a heat lamp. Plaintiff wanted to return to Lake Charles, so he discharged her on January 31, 1968, at which time she still had “considerable spasm.” Dr. McFarland has not seen plaintiff since that date. He testified that: “Based on the findings that I had at the time, there was nothing to indicate a ruptured disc.”
On February 19, 1968, she visited her family physician Dr. Eli Sorkow, a general practitioner. He found moderate spasm of muscles in the lumbo-sacral area. He admitted her to St. Patrick’s Hospital on February 26, 1968, placed her in traction and administered muscle relaxants and analgesics for a period of eight days. He saw her a total of seven times between March 4, 1968 and December 5, 1968, which was her last visit to him.
The trial was held on February 9 and 10, 1970 and there is no record of any medical treatment or visits related to her back complaints after December 5, 1968.
Dr. Sorkow expressed the opinion that plaintiff suffered a lumbo-sacral strain in the accident. He found no evidence of a herniated disc, but thought that it was a possibility. He examined the X-rays made by Warshaw & Cavin on the day of the accident and concluded they showed no abnormalities.
On August 22, 1968, Mrs. Fourcard was examined by Dr. Joseph W. Robertson, neurosurgeon of Houston. The appointment was made by her attorney. She complained of pain in the right lower extremity and intermittent “giving out” of her right lower extremity. Dr. Robertson explained in detail the various physical examinations and tests administered to her in his office and in Methodist Hospital, where she remained for nine days. On his first examination in his office, she walked normally, there was no abnormality in muscle strength, reflexes, sensation, and no limitation of motion in the back. There was some tenderness over the lumbar area and minimal tenderness in the right buttocks. He found no muscle spasm, but did find some weakness in the right lower exremity and in the muscle in the front of her right thigh. Examinations one day later in the hospital revealed different results, which led this doctor to conclude that there was a lack of cooperation on the second examination. X-rays taken in Houston were normal, as was the myelo-gram of August 26, 1968. Dr. Robertson prescribed antidepressants and muscle relaxants, but nothing for pain. Tr. 286, 301.
Dr. Robertson found no evidence of nerve irritation and no ruptured interverte- *791 bral disc. It was his opinion that there was no organic cause for the back or lower extremity pain complained of by Mrs. Fourcard.
Thereafter Mrs. Fourcard went to a Clinic in Brooklyn New York and was seen by numerous Doctors. She was unable to name either the Clinic or the Doctors. Tr. 556, 557. Plaintiffs did not seek to recover these medical expenses.
On November 14, 1968, Mrs. Fourcard was examined by Dr. Charles V. Hatchette, orthopedic surgeon, on referral by Dr. Sor-kow. He found muscle spasm in the right lumbar area, with no atrophy, but findings did indicate the possibility of a herniated disc in the lumbo-sacral area. He conducted a myelogram test on November 22, 1968, and found a small defect at the L-4 level, consisting of a protrusion of the disc, which he diagnosed as a herniated disc and recommended a laminectomy and fusion operation.
Mrs. Fourcard was unwilling to undergo the operation, particularly since she feared that it might result in some damage to her one remaining kidney. Dr. Hatchette could not guarantee the results of the recommended surgery, but did state that there would be no danger to the kidney.
Dr. Hatchette examined the X-rays and myelogram taken for Dr. Robertson three months earlier and found them to be “excellent films” and “completely negative”. But this did not change his opinion based on his clinical examination and his November 22, 1968 myelography. He has not seen Mrs. Fourcard since November 1968.
Dr. Frank Marek, radiologist, who made the X-rays for Dr. Hatchette, testified that the defects on his films were discern-able and he expressed the opinion that there was a protrusion at L-4 on the right. He stated that the Dr. Robertson films were “not adequate for me.”
Dr. Marek’s X-rays were not submitted to Dr. Robertson at his July 18, 1969 deposition.
All physicians were selected by plaintiffs or by their counsel. Plaintiffs’ family physician concluded that Mrs. Fourcard sustained a lumbo-sacral strain, with the possibility of a herniated disc. Two orthopedists examined her in January 1968 and concluded that she had no more than an acute lumbo-sacral strain. A neurosurgeon, who examined her in August 1968, with a myelogram, concluded there was no defect or ruptured disc and found no organic cause for the back or lower extremity pain. Plaintiffs are unable to name the Brooklyn, New York Clinic or Doctors who examined Mrs. Fourcard. Another orthopedist, who examined her in November 1968, with a myelogram, found a small defect at the L-4 level, with a protrusion at L-4-, diagnosed a herniated disc and recommended surgery. The radiologist who assisted also found the defect and protrusion at L-4 on the right.
On this evidence the trial court’s award of $10,000 for her injuries, pain, suffering and disability appears to us to be on the high side. There was no abuse of discretion in the trial court’s refusal to award more damages.
Mrs. Fourcard seeks an award of $45,000 citing Matthews v. F. Miller & Sons, Inc., 146 So.2d 522 (La.App.3d Cir. 1962); Waller v. King, 188 So.2d 231 (La.App.2d Cir. 1966); and Guy v. Kroger Company, 204 So.2d 790 (La.App.2d Cir. 1967). In each of these cases the injuries were more serious. In two, the award included loss of earnings. '-Here there is no certainty of the permanence of the ill effects of her injuries.
The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs appellants.
Affirmed.