# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-772


**ANDREW TAYLOR SMITH**

**VERSUS**

**ANGELICA HARMON**

\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER C-20154206, DIVISION H1
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*

**SHARON DARVILLE WILSON**

**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

Kay Karré Gautreaux
Law Office of Kay Karré Gautreaux
405 West Convent Street
Lafayette, Louisiana  70501
(337) 232-7747
COUNSEL FOR INTERVENOR/APPELLEE:
     Tammy Louise Lyons

Daniel M. Landry, II
Christian B. Landry
The Landry Law Firm
Post Office Box 3784
Lafayette, Louisiana  70502
(337) 237-7135
COUNSEL FOR DEFENDANT/APPELLANT:
     Angelica Harmon

**WILSON, Judge.**

Angelica Harmon (Harmon) seeks to regain custody of her minor daughter, A.L.S.,[1] from A.L.S.'s paternal grandmother, Tammy Louise Lyons (Lyons). For the reasons that follow, we affirm the trial court's award of joint custody to Harmon and Lyons and the judgment and joint custody plan in their entirety.

## I.

## ISSUES

We must decide:

1. Whether the trial court applied the correct legal standard in awarding joint custody to a parent and a non-parent where the biological mother is attempting to regain custody of her daughter after consenting to an award of sole custody to the child's paternal grandmother; and

2. Whether the trial court erred in awarding joint custody to a parent and a non-parent as opposed to awarding visitation to the non-parent and designating the mother as the domiciliary parent considering the constitutional mandates of a parent's rights versus the non-parent's rights.

## II.

## FACTS AND PROCEDURAL HISTORY

Andrew Taylor Smith and Harmon had a toxic relationship that involved the filing of multiple petitions for protection from domestic abuse by both Smith and Harmon beginning on September 1, 2015, through 2018. Both parties had substance-abuse problems, and both parties alleged that they were being physically abused by the other. Smith additionally alleged that Harmon was stalking him. While various orders of protection and temporary restraining orders were issued, most of the petitions were either dismissed by the parties' own motions or by the trial court for the failure of the parties to prove their cases. On July 27, 2017,

---

[1] We use the initials of the minor to protect her identity. Uniform Rules—Courts of Appeal, Rule 5–2.

Smith was granted a judgment that ordered Harmon not to contact or follow Smith for one year.

On May 10, 2016, during the pendency of the petitions, Harmon gave birth to A.L.S., whose father was Smith. Harmon and Smith were never married, but Smith was listed as A.L.S.'s father on her birth certificate. Pursuant to La.Civ.Code art. 196, as it read prior to August 1, 2016, the father's name on a child's birth certificate constituted sufficient proof of acknowledgement of paternity, which provided him with standing in child custody and support proceedings under La.R.S. 9:392.1.

In November of 2016, after Smith allegedly strangled her, Harmon overdosed on Xanax and was admitted to Vermilion Behavioral Health Hospital. She was discharged on December 3, 2016, with diagnoses of major depressive disorder; generalized anxiety disorder; Xanax use disorder, mild; and THC use disorder, mild.

On December 21, 2016, the trial court ordered Harmon and Smith to participate in the Kids First Program offered by the Fifteenth Judicial District Court.

On January 19, 2017, Harmon and Smith entered into a consent judgment providing for temporary joint custody of A.L.S. Smith's custodial time was to be supervised by his mother, Lyons. Harmon's custodial time was to be supervised by her roommate.

On March 8, 2017, Lyons filed a petition to intervene and a petition for custody by a non-parent pursuant to La.Civ.Code art. 133. Lyons alleged that she had been the sole caregiver for A.L.S. since November 28, 2016, when Harmon was hospitalized, and that neither Harmon nor Smith had sufficient resources to care for A.L.S. since neither had steady employment, transportation, or stable

living arrangements. On May 18, 2017, the trial court signed a judgment awarding temporary custody of A.L.S. to Lyons, with Harmon and Smith being given supervised visitation.

The trial court held hearings on August 21, 2017; September 18, 2017; and October 12, 2017, to review Harmon and Smith's progress with their monitoring programs and treatment. Harmon had a positive screen for alcohol, missed several drug screens, and had a negative drug screen. Smith had positive screens for alcohol and marijuana.

On February 18, 2018, Lyons filed a rule for contempt, motion to modify order of temporary custody, and a request for immediate custody and supervised visitation. A hearing was held on February 26, 2018, and the trial court signed another temporary order, which maintained Lyons' temporary custody of A.L.S., on March 7, 2018.

In April of 2018, Smith agreed to attend the Clearstart Program. Smith was also ordered to complete the Family Violence Intervention Program. Harmon continued with supervised visitation with A.L.S.

At a hearing on June 11, 2018, the trial court found that Smith was noncompliant with his drug program. It found that Harmon was compliant with the Clearstart Program and lifted the requirement of supervision during her visits with A.L.S. Harmon was granted visitation every Sunday, Monday, and Tuesday from 9:00 a.m. until 5:00 p.m. Dr. Amy Cavanaugh was appointed to conduct an evaluation of A.L.S.

In 2018, Harmon and Smith attempted to reconcile. On June 15, 2018, Harmon filed a motion to dissolve a previously issued protective order. Neither Harmon nor Smith appeared at the hearing on the motion to dissolve, and the

protective order was dissolved by the trial court. Attempts at reconciliation ultimately proved unsuccessful.

A hearing was held on August 27, 2018, on all pending custody issues. The parties entered into a stipulation that Lyons would have sole custody of A.L.S. Harmon was awarded unsupervised visitation every Monday and Tuesday as well as every other Saturday and Sunday. Smith was awarded supervised visitation at the Avec Les Enfant Visitation Center. The trial court signed a corresponding consent judgment on September 27, 2018.

On October 8, 2018, Lyons filed an ex parte motion to suspend Harmon's unsupervised visitation. Lyons alleged that Harmon was under investigation by the Department of Child and Family Services regarding a report of child abuse relative to A.H., her older daughter from a prior relationship.[2] The trial court held a hearing on the same day. The trial court noted that Harmon was compliant with her monitoring program but that Smith had a drug screen that was positive for cocaine. The trial court then set an in camera conference with Harmon's attorney and Lyons' attorney regarding custody. After the conference, the trial court issued an order suspending Harmon's visitation with A.L.S. until it could appoint a qualified supervisor for her visits. Harmon later successfully completed a court-ordered monitoring program through Clearstart, and the trial court restored her unsupervised visitation with A.L.S.

On May 13, 2019, Lyons filed a rule to establish child support, rule for modifications of visitation, and implementation of a custody plan. The trial court held a hearing on multiple contempt and custody rules on October 22, 2019. Harmon and Lyons entered into a stipulation to resolve all pending issues. On

---

[2] A.H. was born on April 29, 2010. Harmon lost custody of A.H. on March 24, 2011, and A.H. was placed with Harmon's paternal aunt. A.H. was returned to Harmon's custody around March 15, 2013.

4

November 19, 2019, the trial court signed a consent judgment that maintained Lyons' sole custody of A.L.S., granted Harmon unsupervised visitation with A.L.S. every Friday and every other Saturday and Sunday, and continued Smith's supervised visitation with A.L.S. at the Avec Les Enfants Visitation Center.

On June 25, 2019, Harmon filed a certificate of completion of the Best Mom's Course at The Family Tree. She also filed an "Answer to Rule to Establish Child Support, Rule for Modification of Visitation, and for Imposition of Custody Implementation Plan, and Reconventional Demand" against Lyons. Harmon alleged that she should be awarded shared custody or additional periods of visitation, including overnight visits with A.L.S. A hearing officer conference was held on July 24, 2019, but the hearing officer declined to make a recommendation on Harmon's request for modification of custody and visitation.

On October 22, 2019, Harmon and Lyons entered into a stipulation to resolve outstanding issues. On November 19, 2019, the trial court signed a consent judgment on child custody that maintained Lyons' sole custody of A.L.S., granted Harmon visitation every Friday from 10:00 a.m. until 6:00 p.m. and every other Saturday and Sunday from 10:00 a.m. until 6:00 p.m., and continued Smith's supervised visitation.

On July 15, 2020, Harmon filed a rule for change of custody alleging a substantial change in circumstances. Harmon asserted that she could now provide a loving and stable home for A.L.S. and that she had completed all the mandated evaluations, programs, and treatments. Lyons responded with rules for contempt and for arrearages of child support. All pending issues came for hearing on April 28 and 29, 2021. Smith did not appear at the hearing. On May 7, 2021, the trial court issued a temporary judgment that expanded Harmon's visits with A.L.S. to include overnight stays.

5

On June 23, 2021, the trial court signed a judgment that awarded joint custody of A.L.S. to Harmon and Lyons. Neither Harmon nor Lyons was named as domiciliary parent. On the same day, the trial court issued a joint custody implementation plan and judgment, along with detailed written reasons for its ruling. Beginning with the 2021-2022 school year, Harmon and Lyons were to share custody of A.L.S. on an alternating seven-day basis with the exchange day being Friday.

Harmon filed separate appeals of the two judgments; therefore, this is a companion case to *Smith v. Harmon*, 21-773 (La.App. 3 Cir. ___/___/22), ___ So.3d ___, which was rendered by this court on this same day. Harmon and Lyons each filed one brief to address the issues presented in both appeals.

## III.

## STANDARD OF REVIEW

> It is well established that in every instance relating to the custody of a child, the trial court's factual findings will not be disturbed in the absence of manifest error. *Guidry v. Guidry*, 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. The trial court is in a superior position to assess witness credibility and the best interests of the child after considering all of the testimony and evidence. *Id.* Accordingly, we will not disturb a custody award unless an abuse of discretion is clearly shown. *Id.*

*Joubert v. Joubert*, 19-187, pp. 5-6 (La. App. 3 Cir. 10/9/19), 283 So.3d 502, 505.

This court also noted that:

> when a trial court applies incorrect legal principles and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. "[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Id* at 735.

*Joubert v. Joubert*, 19-349, p. 4 (La.App. 3 Cir. 11/13/19), 285 So.3d 7, 11.

6

# IV.

## LAW AND DISCUSSION

In this instance, Harmon is seeking to modify a stipulated judgment that awarded sole custody to a non-parent. In *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So.3d 231, the biological father sought to modify a stipulated judgment that awarded joint custody to him and to the child's maternal grandmother. The trial court awarded sole custody to the father. The child's mother and maternal grandmother appealed. The court of appeal vacated the award of sole custody to the father and applied the burdens of proof adopted by *Jones v. Coleman*, 44,543, pp. 18-19 (La.App. 2 Cir. 7/15/09), 18 So.3d 153, 164:

> In any proceeding thereafter to restore custody of the child to the parent, and to thereby modify or end the nonparent's custody, the parent shall have the burden of proof and the dual tests of Article 133 shall apply. First, the parent must demonstrate his rehabilitation which eliminates the "substantial harm" threat to the child which existed at the time of the initial judgment. Second, the parent must establish that the adequate and stable environment in which the child was placed with the nonparent as a result of the initial adjudication has materially changed. In the absence of such a change, the parent's claim to modify the nonparent's custody of the child shall not prevail, and the rehabilitation of the parent alone shall afford him only an appropriate visitation allowance under La. C.C. art. 136.

The father applied for a writ of certiorari, which was granted by the Louisiana Supreme Court. The supreme court noted its disagreement with the appellate court's reasoning,[3] found that the appellate court applied an incorrect standard, and conducted a de novo review of the record. The supreme court ultimately affirmed the court of appeal's ruling awarding joint custody because, although the father's "recent involvement is commendable and is reflected in our finding some of the factors from La. C.C. art. 134 in equipoise . . ., several of the remaining factors

---

[3] The supreme court noted that if the *Jones* standard applied, "even if the parent's circumstances radically change for the better, the parent can never regain domiciliary custody if the non-parent maintains the status quo." *Tracie F.*, 188 So.3d at 243.

clearly weigh in favor of maintaining Kathy as the domiciliary parent[.]" *Tracie F.*, 188 So.3d at 249. The supreme court noted that:

> For the reasons discussed in this opinion, we are especially guided by La. C.C. art. 131 and the legislative comments to its revision, and we hold that the overarching inquiry in an action to change custody is "the best interest of the child." Moreover, consistent with our prior jurisprudence regarding stipulated custody awards, we further hold that a biological parent with joint custody, who seeks modification of a stipulated custody award to obtain greater custodial rights, must prove: 1) there has been a material change in circumstances after the original custody award; and 2) the proposed modification is in the best interest of the child. *See Evans v. Lungrin,* 97–0541, 97–0577, p. 13 (La. 2/6/98), 708 So.2d 731, 738; *cf. Bergeron v. Bergeron,* 492 So.2d 1193 (La.1986).

*Id.* at 235. The the supreme court further explained:

> To further clarify the jurisprudence, the instant case presents the efforts to expand existing custodial rights in favor of a biological parent, who has joint custody, but who is not designated as the domiciliary parent. We are not presented with a custody contest between a biological parent who has voluntarily relinquished custody or whose parental rights have otherwise been terminated; such a contest represents a separate class of cases which differs from the one which we presently decide. There is a distinction between the efforts of a parent to *expand* custodial rights and the efforts of a parent to *regain* custodial rights. We do not, therefore, adopt the standards from the cases in which a parent seeks to *regain* custodial rights. However, the constitutional protection accorded to parental rights allows us to condense from our analysis in which we overruled *Cutts* [*v. Cutts*, 06-33 (La.App. 3 Cir. 5/24/06), 931 So.2d 467], this guiding principle: in an action to modify a stipulated custody arrangement, a parent who retains custodial rights should not have a greater burden of proof than a parent without custodial rights.

*Id.* at 246 (footnote omitted) (emphasis in original).

In the case sub judice, the trial court noted that *Tracie F.*, 188 So.3d 231, was distinguishable because the parent in that case was not seeking to regain custody. The trial court treated this case as presenting a res nova issue. However, the trial court found that "there should be no difference in the burden of proof in the matter before the court from the proof requirement articulated in *Tracie F.*" The trial court queried: "Why should a parent be prejudiced in the future when

8

they make a decision that is in the best interest of the child to be in the care of a non-parent?" That trial court then noted that "[s]tipulating to sole custody in favor of the non-parent preserves and fosters the longstanding jurisprudence that repetitive custody litigation is harmful to children."

In *Millet v. Andrasko*, 93-520 (La.App. 1 Cir. 3/11/94), 640 So.2d 368, the first circuit was presented with a situation like Harmon's case. In that case, the child's maternal aunt and maternal great grandmother were granted custody. Later, the Taylors, the child's maternal great aunt by marriage and her husband, were awarded sole custody. The biological father consented to this. A few months later, the father sought sole custody but was granted joint custody with the Taylors. The court in *Millet* stated that "the issue presented for review is what is the appropriate standard to be applied in custody disputes where a parent seeks to modify an earlier consent decree that awarded sole custody to a non-parent" and noted that "[t]he law is not well settled as to who bears the burden of proof or as to what proof is necessary at a hearing by a parent against a non-parent to modify a considered decree or a non-considered decree of custody to the non-parent." *Id*. at 370. This is exactly the issue in Harmon's case. The *Millet* court concluded that the father must first prove a change in circumstances materially affecting the child's welfare before this court would consider the "best interest of the child" standard. That is what the Louisiana Supreme Court did in *Tracie F*., 188 So.3d 231, and what the trial court did in this case.

In *Tracie F*., 188 So.3d at 246, n. 14, the Louisiana Supreme Court acknowledged *Millet*, 640 So.2d 368, and noted that it "articulated burdens of proof similar to the standard we find applicable" but found it unnecessary to "delve" into because it did not "conflict with [or] directly address the [] situation" presented in *Tracie F.*

The trial court found that a material change in circumstances was proven by Harmon in that: (1) she successfully completed both the Family Court Monitoring Program and the Best Mom's course; (2) she received a full psychological evaluation and completed thirty-eight counseling sessions with Dr. Michael Bernard; (3) her bonding and attachment with A.L.S. was positively assessed by Dr. Donna Aucoin and Kayla Fanguy, LPC; and (4) she married, and her living conditions and financial situation have stabilized and improved. Once it found a material change in circumstances, the trial court was required to examine whether a change in the custody would be in the best interest of A.L.S. *Millet*, 650 So.2d 368.

The best interests of the child are determined by consideration of the factors found in La.Civ.Code art. 134:

A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

10

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

B. In cases involving a history of committing family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, including sexual abuse, as defined in R.S. 14:403, whether or not a party has sought relief under any applicable law, the court shall determine an award of custody or visitation in accordance with R.S. 9:341 and 364. The court may only find a history of committing family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

The trial court considered all these factors. The trial court noted both Harmon and Lyons loved A.L.S. and would be able to give her love, affection, and spiritual guidance and to continue her education. It noted that Smith's interaction with A.L.S. had been sporadic. With respect to the parties' ability to provide material needs, the trial court noted that Lyons had provided for A.L.S. with little or no financial contribution from Harmon or Smith despite child support orders. The trial court then noted that Harmon's financial condition had vastly improved and stabilized upon her marriage but recognized that her husband was an illegal alien who cannot be deported because he was supporting his children who are United

11

States citizens. The trial court noted that both Harmon and Lyons were mentally fit to care for A.L.S. It noted that it did not believe that Harmon had a substance abuse problem but used marijuana and alcohol because of her anxiety and depression, which are now being addressed with therapy and appropriate medication.[4] The trial court pointed out that Harmon and Lyons had displayed acrimonious behavior to each other but were working to improve their communication with each other even though Lyons had been resistant to Harmon's attempts to be more involved with A.L.S. The trial court concluded that "it is time to transition [A.L.S.] from the home of her grandmother to the home of her mother." But, since Harmon had been married for less than a year and since A.L.S. is just getting to know her stepfather and his children, the trial court stated that it would not permit Harmon to relocate A.L.S. outside of Lafayette. The trial court noted that A.L.S., who was nearly six years old at the time of trial, was not of sufficient age to express a preference as to her custody.

Harmon, in brief, cites cases which support her argument that her rights as a parent are superior to those of Lyons, a non-parent. *See Wood v. Beard*, 290 So.2d 675 (La.1974). This court recognizes that biological parents have a constitutionally protected right to "the companionship, care, custody, and management" of their children under the Fourteenth Amendment to the United States Constitution. *Tracie F.*, 188 So.3d at 242. Harmon argues that the trial court failed to balance her fundamental rights with the best interest factors set forth in La.Civ.Code art. 134. Harmon argues that if this court upholds the trial court's award of joint custody, it will lead to her "being burdened with the impossible" because she will never be able to meet the requisite standard of proof to regain

---

[4] The trial court also cited Harmon's long history of abuse at the hands of her parents and former romantic partners, including A.H.' biological father.

12

custody of A.L.S. in the future. For the above-stated reasons, we find no merit to Harmon's argument that the trial court did not consider her fundamental rights.

Lyons argues that the trial court applied the correct legal standard and that its findings of fact are correct. She notes that Harmon's assertion that because she has shown a material change in circumstances, she should be awarded custody without regard to the best interest of A.L.S. is legally incorrect because it eliminates consideration of the factors contained in La.Civ.Code art. 134. Lyons also asserts that the trial court applied the lower and less burdensome standard, which actually benefitted Harmon.

There is a preference for the appointment of a domiciliary parent in La.R.S. 9:335; however, the statute recognizes that a trial court can opt not to designate a domiciliary parent. When the trial court opts not to assign a domiciliary parent, one of the two exceptions contained in La.R.S. 9:335 must exist. Either a valid implementation order to the contrary must exist or other good cause must be shown. There is a joint custody plan that corresponds with the judgment awarding joint custody, which specifically states that no domiciliary parent or custodian is being named. This court finds that the joint custody plan constitutes a valid implementation order since it provides for the allocation of specific time periods during which each party has physical custody of the child, includes a provision concerning evacuation because of an emergency or declared disaster, and allocates the legal authority of the parties as required by La.R.S.9:335.[5] Therefore, with respect to the trial court's failure to designate either Harmon or Lyons as domiciliary parent, we find no error.

---

[5] The Louisiana Supreme Court found "that La.R.S. 9:335 does not explicitly require a particular form for the rendition of a joint custody implementation order[.]. *Hodges v. Hodges*, 15-585, p. 18 (La. 11/23/15), 181 So.3d 700, 711.

Based on *Tracie F.*, 188 So.2d 231, and *Millet*, 640 So.2d 368, we find that the trial court applied the appropriate standard in requiring Harmon to prove a material change in circumstance and then awarding custody in accordance with consideration of the best interest of the child. We further find no manifest error in the trial court's findings of fact.

## V.

## CONCLUSION

We find no error in the trial court's rulings. Therefore, and for all the foregoing reasons, we affirm the trial court's award of joint custody of A.L.S. to her mother, Angelica Harmon, and to her paternal grandmother, Tammy Louise Lyons. All costs of this appeal are assessed to Angelica Harmon.

**AFFIRMED.**